**Rickey Lynn DOWDY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51542.**

Court of Criminal Appeals of Texas.

March 24, 1976.

Michael J. Rogers, Cleburne, for appellant.

Oran Smith, Jr., Dist. Atty., Cleburne, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from an order revoking probation.

Appellant entered a plea of guilty before the court to the offense of theft of property over the value of two hundred dollars on January 9, 1975. Punishment was assessed at three years probated.

The State filed a motion to revoke appellant's probation on March 4, 1975, alleging that appellant had violated the terms and conditions of his probation in that on or about February 21, 1975, and during the period of such probation, appellant

"(1) did then and there, with intent to commit theft, break and enter a vehicle without the effective consent of Steve Moore, the owner, AGAINST THE PEACE AND DIGNITY OF THE STATE.

(2) did then and there, with intent to commit theft, break and enter a vehicle without the effective consent of Jimmy Hamilton, the owner, AGAINST THE PEACE AND DIGNITY OF THE STATE.

(3) did then and there, with intent to commit theft, break and enter a vehicle without the effective consent of Douglas Moore, the owner, AGAINST THE PEACE AND DIGNITY OF THE STATE."

The record reflects that after a hearing on April 15, 1975, the court entered an order revoking appellant's probation, the court finding "that the State has satisfactorily established the grounds that were alleged in the motion . . . ."

Appellant contends that the court abused its discretion in revoking his probation in that State's Exhibits 1 and 2, confessions of appellant, were fruits of an illegal arrest and inadmissible. Appellant urges that without such exhibits the evidence was insufficient to support a finding that a condition of probation had been violated.

Appellant admits that he "was given his constitutional warnings before he made each of the statements," but urges "that since the arrest itself was illegal, all evidence obtained from that arrest is null and void 'ab initio.' "

The record reflects that appellant's probation officer, Ralph Garret, and officer Charles Davis went to appellant's house between 10:00 and 10:30 a. m. on February 26,

1975. Garret asked appellant to accompany him and Davis to the Cleburne police station where a Detective Hudson wanted to talk to him. Upon arrival at the police station, it was determined that there were "three or four" other suspects being questioned about "ten or fifteen theft cases" of "tape decks and tape players." Officer Davis testified that soon after arrival at the police station "around eleven" he was told by Detective Hudson to place appellant under arrest. The first of the two statements was taken at 1:20 p. m. that day by Hudson, who stated that appellant made same "voluntarily" and "willingly" without "any duress or force or persuasion used upon the defendant . . . ," and was not made until appellant was warned of his rights and appellant stated that he understood his rights.

Appellant was taken before a magistrate about 3:30 p. m. and again warned of his rights. Another statement was taken from appellant at 8:40 p. m. that evening. Officer Baker, the person to whom this statement was given, testified that appellant gave him the statement after "approximately five to ten minutes" of interrogation. This statement concerned an offense appellant was connected with on February 20, 1975, while the earlier confession related to an offense which occurred on February 21, 1975.

■ This Court has just held that the protection offered by the Fourth Amendment extends to probationers. *Tamez v. State,* —— S.W.2d —— (1976). The rationale underlying the *Tamez* opinion dictates that a probationer is not deprived of Fifth Amendment rights.

In *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), Brown, who had been arrested without probable cause and without a warrant, made two inculpatory statements after he had been given the warnings prescribed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The United States Supreme Court reversed the Illinois Supreme Court, which had held that the Miranda warnings had broken the causal chain between the illegal arrest and the subsequent statements, stating:

> "We emphasize that our holding is a limited one. We decide only that the Illinois courts were in error in assuming that the Miranda warnings, by themselves, under Wong Sun [1] always purge the taint of an illegal arrest."

The facts set forth in the *Brown* opinion reflect that the defendant, upon returning to his apartment in the early evening of May 13, 1968, was confronted with a gun pointing through the window of his apartment held by a stranger who was inside the apartment. The defendant was told, "Don't move, you are under arrest." Another man, also with a gun, came up behind defendant and repeated the statement. The two men turned out to be detectives on the Chicago police force. The opinion notes that the record does not divulge when the two detectives advised the defendant of their identity, "but it is not disputed that they broke into his apartment, searched it, and then arrested Brown, all without probable cause and without any warrant, when he arrived." Defendant was taken to the police station, being questioned by the detectives during the twenty minute drive. Upon arrival at the station house, defendant was placed in an interrogation room. The officers obtained a murder file, gave defendant his Miranda warnings, and confronted the defendant with the fact that they had recovered a bullet defendant had shot into the ceiling of a pool room and that it had been taken to the crime laboratory to be compared with a bullet removed from a murder victim. The defendant then made a statement which "was separated from his illegal arrest by less than two hours . . . ." The Supreme Court found there was no intervening event of significance between the arrest and the first statement and that the second statement given at 3:00 a. m. the next morning "was clearly the

1. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

result and the fruit of the first." The defendant was first taken before a magistrate some fourteen hours after his arrest, at 9:30 a. m. the day following his arrest. In reviewing the factors to be considered in determining whether the confession is obtained by exploitation of an illegal arrest, the Supreme Court said:

"The question of whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see *Johnson v. Louisiana,* 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972), and, particularly, the purpose and flagrancy of the official misconduct are all relevant. See *Wong Sun v. United States,* 371 U.S., at 491, 83 S.Ct. 419. The voluntariness of the statement is a threshold requirement. Cf. 18 U.S.C. § 3501. And the burden of showing admissibility rests, of course, on the prosecution." (reference to footnote citations omitted)

■ The record in the case before us is devoid of information possessed by the officers who arrested appellant. Thus, we are unable to make a determination if probable cause existed to arrest appellant without a warrant. Under such circumstances, we can only conclude that the arrest and detention of appellant were illegal.

■ A sharp contrast exists in the circumstances surrounding the arrest of the defendant in *Brown v. Illinois,* supra, and appellant in the instant case. We deem it significant that the Supreme Court noted, "The manner in which Brown's arrest was effected gives the appearance of having been calculated to cause surprise, fright and confusion." No such flagrant misconduct is present in the instant case. Appellant's probation officer went to appellant's house in the company of another officer and the probation officer asked appellant to go with them to the police station where Detective Hudson wanted to talk to him.[2] Shortly after arrival at the station house, appellant was placed under arrest. The record in the instant case, unlike *Brown,* does not reflect questioning of appellant en route to the police station or questioning after arrival at the station house, nor is there any showing that prolonged questioning preceded the first confession. In *Brown,* it appears questioning was continued from the time of the arrest until the confession was made with the exception of time consumed in obtaining a murder file. The record in the case before us reflects that four or five suspects were being processed on ten or fifteen theft cases at the time appellant was brought to the police station. Officer Davis explained that processing included taking information, photographing and taking fingerprints of the person arrested and it appears that the officers at the police station were occupied with the job of "processing" persons at the time of and following the arrival of appellant. The State urges that this accounted for the delay in getting appellant to a magistrate. *Brown v. Illinois,* supra, emphasized that the voluntariness of the statement is the threshold requirement. Clearly, factors present in *Brown* which tended to militate against the voluntariness of the confession are not present in the instant case. The record does not reflect, nor is it contended, that any action was taken by the officers which tended in any way to deprive appellant of his capacity for self-determination. We conclude that the

---

**2.** A condition of appellant's probation required that he "Permit the said probation officer to visit him at his home or elsewhere."

confessions taken from appellant were not obtained by the exploitation of an illegal arrest and that the court was not in error in admitting them into evidence. See and cf. *Lacefield v. State,* Tex.Cr.App., 412 S.W.2d 906; *Chase v. State,* Tex.Cr.App., 508 S.W.2d 605.

We find that the court did not abuse its discretion in revoking appellant's probation.

The judgment is affirmed.

Opinion approved by the Court.