**George O. BAXTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 113–82.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 23, 1983.

---

John C. Hardin, McKinney, for appellant.

Tom O'Connell, Dist. Atty. and Bill Schultz, Asst. Dist. Atty., McKinney, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Appellant was convicted of injury to a child. Punishment was assessed at imprisonment for ten years. The Dallas Court of Appeals reversed the conviction, finding that the State improperly questioned the appellant concerning a possible extraneous offense. *Baxter v. State*, 629 S.W.2d 135 (Tex.App.Dallas, 1982). We granted the State's petition for discretionary review to consider whether the opinion of the Court of Appeals was in conflict with this Court's prior holding in *Cleveland v. State*, 502 S.W.2d 24 (Tex.Cr.App.1973).

The record reflects that during the punishment phase of the trial appellant testified as a witness in his own behalf to establish his eligibility for probation. On cross-examination, the State, referring to appellant's confession which was introduced during the guilt stage of the trial, inquired as to how appellant "happened to be twisting the [injured] child's leg?" The following transpired:

"A. (By appellant) Sir, upon that night I had been awake that night and my wife was asleep and the child was crying. Now I was sitting up and I decided that I didn't want to disturb my wife and I would allow her some rest because she had worked hard that day. So I took the child and I went over to the seat and sat down and sat him on my right knee.

Upon doing so, I had been trying to burp him.

After having tried to, you know, burp him some, I went ahead and started jogging him on my knee. I don't know why I did it, sir, but that was it. And from there, I had been thinking about a lot of things, about various kinds of things that I had on my mind, and as I put in the statement.

"Q. Tell the jury what things you had been thinking of.

"A. I was thinking about the child's welfare, about the bills, about the child and what would become of him in the future, things about the child's welfare, about what would have happened to him in the future, would I be able to sustain him."

A short time later, the following exchange took place:

"Q. (By prosecutor) I want you to be a little more specific about how you are concerned about the child's welfare; what do you mean by that?

"A. The best I can explain that to you, sir, when I became married I had one desire, to handle a child of my own that I could take and raise and become a father to and give things to. Whenever the child became older, to be able to let him or her, whichever it was to be, to have whatever education was necessary, what love was necessary and what attention was necessary.

"Q. That was your desire? You became married to handle a child; is that right?

"A. Yes, sir.

"Q. How long after you became married did you have an opportunity to handle a child?

"A. Just after we was married we had one, and we had this one.

"Q. You had one just after you were married?

"A. Yes, sir.

"Q. Was it a male or female?

"A. Female.

"Q. And what is the age of that child at this time?

"A. I couldn't say at this time, sir, because I have had a lot of thinking to do while I was in this jailhouse, and I have a very short memory when it comes to things like this.

"Q. Well, I am talking about the child that you said you had just after you were married?

"A. She would be . . .

"Q. Was that your natural child?

"A. No, it wasn't.

"Q. When was the child born with reference to the marriage?

"A. Just about a month after we was married.

"Q. All right, and do you know where that child is now?

"A. Yes, sir, I do.

"Q. Where?

"MR. ROACH: Your Honor, I am going to object to the questioning. Mr. Schultz is deliberately and intentionally getting into a matter that is extraneous to this case.

"MR. SCHULTZ: May we approach the bench, Your Honor?

"THE COURT: I will overrule the objection. You may answer the question.

"Q. (By Mr. Schultz) Where is the child now? Tell the jury, Mr. Baxter?

"A. The child is buried.

"Q. How did the child die, Mr. Baxter?

"A. The child died, according to the autopsy . . .

"Q. I didn't ask you that, I asked you how the child died, Mr. Baxter?

"MR. ROACH: Your Honor, I'm going to object to this line of questioning. It's an extraneous transaction. It's inadmissible, and Mr. Schultz knows that he can't cross examine the witness, even the defendant in the case, with regard to extraneous matters and transactions, and I will object.

"THE COURT: I will sustain the objection.

"MR. ROACH: Your Honor, under the circumstances I would ask that the jury panel be instructed to disregard Mr. Schultz's remarks.

"THE COURT: I will instruct the jury to disregard the question that was just asked.

"MR. ROACH: Your Honor, I respectfully move for a mistrial.

"THE COURT: I will overrule your objection.

"MR. ROACH: Is the motion overruled for a mistrial, Your Honor?

"THE COURT: Yes, sir.

"Q. (By Mr. Schultz) When did the child die, Mr. Baxter?

"A. It was around July of '77.

"Q. Do you know the difference between disease and physical trauma, Mr. Baxter?

"A. I am not certain of that, sir.

"Q. Do you know the difference between a physical injury and a disease?

"A. Yes, sir, I could just about do that, yes.

"Q. Did the child die from a physical injury or disease, Mr. Baxter?

"A. Physical injury, sir.

"Q. Was this physical injury inflicted in any particular area of the child's body, Mr. Baxter?

"A. It was.

"MR. ROACH: Your Honor, I object to this same line of questioning on the same grounds as to extraneous transactions.

"THE COURT: I will sustain the objection.

"MR. ROACH: Your Honor, we further ask that the jury be instructed to disregard the question and answer.

"THE COURT: I will so instruct the jury to disregard the last question."

In reversing, the Court of Appeals held that "[t]he improper and prejudicial questions were elicited solely to leave the impression with the jury that the defendant may have killed his first child. Thus, the general rule which makes inadmissible extraneous offenses applies." *Baxter v. State,* supra, at page 137.

■ However, before the rules relating to the admissibility of extraneous offenses come into play, there must be some type of inadmissible evidence presented of the accused's prior criminal conduct for error to be present. *Roach v. State,* 586 S.W.2d 866 (Tex.Cr.App.1979). In the case at bar, the evidence which got before the jury did not constitute proof of an extraneous offense, as appellant contends. Further, appellant's objections were sustained, and the State was not permitted to show further any connection of appellant to an extraneous offense, if one in fact existed. Finally, although appellant was not formally charged with any offense relating to the death of the other child, appellant demonstrated no bad faith on the part of the State in pursuing this line of questioning. See *Hernandez v. State,* 532 S.W.2d 612 (Tex.Cr.App.1976), and *Solis v. State,* 492 S.W.2d 561 (Tex.Cr. App.1973).

■ Additionally, we note that even if it could be argued that the evidence presented herein showed an extraneous offense, no reversible error is present. First, the Court of Appeals has correctly set forth the general rule:

"Ordinarily, when a defendant voluntarily takes the stand in his own behalf, he may be contradicted, impeached, bolstered or attacked just as any other wit-

ness; however, he cannot be questioned on matters forbidden by law such as a possible extraneous offense of which he has not been convicted." *Baxter v. State,* supra, at page 136.

But the exception that extraneous offenses are admissible for impeachment, even if not reduced to a final conviction, when the witness by his testimony leaves a false impression with respect to his prior criminal record, should not be limited solely to the witness' assertions on direct examination. See *Ex parte Carter,* 621 S.W.2d 786 (Tex.Cr.App.1981), and *Shipman v. State,* 604 S.W.2d 182 (Tex.Cr.App.1980). To so hold would, as the State points out, "be a free ticket for a defendant to offer outrageous self-flattering remarks in response to cross-examination without fear of the prosecutor being able to resort to proof of extraneous offenses directly connected to the particular self-flattering remarks."

Lastly, the holding of the Court of Appeals appears in conflict with this Court's prior opinion in *Cleveland v. State,* supra. The Court, citing *Allaben v. State,* 418 S.W.2d 517 (Tex.Cr.App.1967), said:

" 'Evidence to be offered at the hearing on punishment pursuant to the provisions of Article 37.07, Section 2(b), Vernon's Ann.C.C.P. is by no means limited to the defendant's prior criminal record, his general reputation and his character. Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible.' 418 S.W.2d at 519. See *White v. State,* 444 S.W.2d 921, 923 (Tex. Cr.App.1969); *Basaldua v. State,* 481 S.W.2d 851, (Tex.Cr.App.1972); *Brumfield v. State,* 445 S.W.2d 732, 741 (Tex. Cr.App.1969); *Santiago v. State,* 444 S.W.2d 758 (Tex.Cr.App.1969).

"And, in *Davis v. State,* 478 S.W.2d 958 (Tex.Cr.App.1972), this court wrote:

" 'While the general rule is that specific acts of misconduct by the accused which have not resulted in final convictions cannot be admitted, this court has been reluctant to exclude legally admissible evidence which is relevant to a fair determination of an accused's application for probation....' (cases cited omitted) 478 S.W.2d at 959.

"The issue of probation for this appellant, who had plead guilty to the possession of marihuana, was squarely before the jury. We are not here dealing with improper impeachment under Article 38.-29, Vernon's Ann.C.C.P., or testimony which was not proper under Article 37.07, Vernon's Ann.C.C.P. Other issues can become involved rendering relevant testimony admissible. See *McCrea v. State,* 494 S.W.2d 821 (Tex.Cr.App.1973), where defendant was asked if he was addicted to any drug, addicted to marihuana or had shot speed in the past, and such was held not to be error."

Even if the evidence before the jury had implicated appellant in an extraneous offense, we believe the holding of *Cleveland* would have permitted the State, in this case, to introduce it before the jury. The judgment of the Court of Appeals is reversed and this cause is remanded to the Court of Appeals for consideration of appellant's other grounds of error.

TOM G. DAVIS, J., concurs.

CLINTON, TEAGUE and MILLER, JJ., dissent.

ONION, P.J., not participating.