David Wayne McKAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 69049.

Court of Criminal Appeals of Texas, En Banc.

Oct. 2, 1985.

Rehearing Denied Feb. 12, 1986.

Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Dist. Atty. and Ruth E. Plagenhoef, Norman Kinne, Paul Macaluso and Rider Scott, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is an appeal taken from a conviction of capital murder. V.T.C.A. Penal Code, § 19.03(a)(2). The death penalty was imposed after the jury answered affirmatively the special issues submitted under Art. 37.071, V.A.C.C.P. Appellant brings twenty grounds of error before this Court. We affirm the conviction.

Although appellant does not challenge the sufficiency of the evidence to support the conviction, a brief recitation of the facts will be of assistance in our resolution of his grounds of error.

In 1978 appellant met Kevin Long, subsequently a key State's witness against appellant. They worked and lived together for several years, and in 1981 moved to Dallas where the events leading to appellant's trial and conviction occurred.

In February, 1982, Long obtained a .32 revolver and a .380 automatic pistol, which he gave to appellant with the understanding that they would "do a robbery." During the last week of February, 1982, appellant suggested to Long that they rob some pharmacies together. Appellant suggested that they use Long's truck, since it had no license plate. When Long did not agree to the use of his truck, appellant told him that he would go to a parking lot and find a nice car, hijack the driver, and "not leave any witnesses."

On Thursday, March 4, 1982, the deceased, Bobby Hill, left his home to take a set of car keys to his girlfriend, who had lost her keys at the Rox-Z Club. Hill drove his father's 1980 tan over navy blue Chrysler Cordoba to the club.

When deceased was stopped in the parking lot, appellant walked to the car, circled it, knocked on the driver's window and told the deceased that he needed a ride. After refusing to give appellant a ride, Hill escorted his girlfriend to her car. She then saw appellant approach Hill. Hill looked down in the direction of appellant's hands and then backed up to his car, got in, and slid over to the passenger's seat. Appellant got into the driver's seat and the two of them drove away.

On Friday, March 5, 1982, at about 7:00 a.m., a carpenter discovered Hill's body in a field in Las Colinas, a subdivision in Irving just outside of Dallas. Hill's hands had been tied with telephone cord. He had been shot four times in the head.

Also on March 4, at approximately 3:30 p.m., Long was arrested by the police of University Park, a suburb of Dallas, for the delivery of cocaine. Long was incarcerated in the University Park Police Department Jail.

At about 8:00 a.m. March 5, appellant arrived at the University Park Police Department Jail to visit Kevin Long. An officer at the jail asked appellant for identification before permitting him inside. Appellant left to get his driver's license, which he said was in his car. The officer saw appellant in the parking lot standing next to a tan over blue Chrysler. Appellant said he could not find his license, but was permitted inside to visit Long.

Appellant told Long that he had obtained a car, abducted a man from the Rox-Z Club, tied him with telephone cord, and shot him six times in the back of the head. Appellant stated that he had waited until the blood stopped squirting out of the back of the deceased's head before leaving.

When appellant left the jail, Long asked to talk to Officer Holman. As a result of the conversation, Holman called several police departments in the area. The Irving Police Department sent investigators to interview Long about appellant's statements.

An arrest warrant was then issued for appellant's arrest.

On March 5, at 11:15 p.m., William Motteram, a manager of a Pizza Hut, was robbed at gunpoint by appellant who drove off in a late model "dark with light top" Chrysler Cordoba. The gun recovered from appellant after his arrest was identified by Motteram as one that looked similar to the gun used in the robbery.

On March 6, 1982, at about 2:30 a.m., appellant was arrested as he pulled out of the Rox-Z parking lot driving a tan over blue Chrysler. A search of the car revealed two weapons and three letters belonging to appellant.

On March 7, 1982, appellant was identified at a photographic lineup conducted at the Irving Police Department as the person who left the club with Bobby Hill. Hill's girlfriend made the identification.

■ In ground of error number nineteen, appellant contends that the trial court committed reversible error in excusing for cause venireperson Dorothy Jones, in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and consequently denying appellant his right to an impartial jury.

The record of the voir dire examination of prospective juror Jones reflects:

"Q. ... How do you personally feel about the death penalty?

"A. I understand that only God is the giver and taker of life. I do not believe that human beings should take life, and I could not honestly, you know live with myself—

"Q. Okay.

"A. —if I were a part of that type of situation. Those are my convictions. And that's the truth.

\* \* \* \* \* \*

"Q. ... I gather from what you're saying that you just simply feel that taking one life does not justify someone else taking a life.

"A. I do not.

"Q. And God is the only person who—

"A. God, to me—

"Q. —is justified in taking somebody's—

"A. —is the one that is the giver of life—

"Q. All right.

"A. —and He is the one that takes life.

"Q. Right.

"A. Is the way I believe and feel.

"Q. That's just fine, Mrs. Jones. Like I said, other people have expressed the very same point of view that you have. And I gather that this is a feeling that you have—well, this is obviously a very strong religious feeling that you have.

"A. Uh-huh.

\* \* \* \* \* \*

"Q. All right. I gather, from what you are saying, that there is no way and there are no facts or circumstances that could ever allow you to actually sit on a jury and make any decision that would result in a verdict that would cause the death of anybody. Is that correct?

"A. Yes.

"Q. All right. Did I confuse you there?

"A. No.

"Q. In other words, there's just no way you could ever serve on this jury or any other jury and vote in such a way that would result in somebody getting the death penalty?

"A. That's correct.

\* \* \* \* \* \*

"Q. And for that reason, you could never serve on a jury and make a decision that would actually result in somebody dying?

"A. Right.

"Q. Just no way?

"A. Right.

\* \* \* \* \* \*

"Q. ... Now, Mrs. Jones, I gather from what you said that there's simply no way that you could ever have done that; you could never have served on a jury like that and actually written in death, or even participated in writing in that word death. Is that correct?

"A. Yes.

\* \* \* \* \* \*

"Q. And I gather from what you've said that your strong religious feelings are such that you could never, knowing yourself, you could never write in death, like you said—isn't that right?

"A. Yes.

"Q. I gather from what you're saying that you could never return three yes answers to those questions, knowing that three yes answers would mean the death of anybody. Am I reading you correctly, Mrs. Jones?

"A. Yes, you are.

"Q. Have I said anything incorrectly?

"A. No.

\* \* \* \* \* \*

"Q. ... Now, from what you've told me, Mrs. Jones, I would gather that it doesn't matter whether these questions are submitted to you or any other questions, that you simply could not, because of your religious feelings, answer any questions in any way that would result in three yes answers because you know that three yes answers means that the person on trial dies.

"A. That's correct.

"Q. And I gather, for that reason, that if—and I'm speaking just for an example here. I'm not suggesting that you'd be put on this jury, but let's say if you were put on that—if you were forced to be in that position, were you actually on a jury, that you would be—your religious feelings are so strong that it would require you to—that you would either have to answer one of those questions no—you see?—or not answer the questions at all, to ensure, to guarantee, in other words, that the person on trial would not die.

Now, I don't want to put any words in your mouth, but is that the way you feel?

"A. I don't think I could answer three yes questions.

"Q. Okay. Well it's—

"A. Knowing that the results would be death.

"Q. All right. That's what I'm asking you. In other words, if your feelings that you have expressed to us are so strong, then you know, of course, the law allows us to tell you beforehand what the result is, what the effect is of three yes answers.

And just like you told us that there's no way you could ever, prior—before 1974 ever return a verdict of death by writing it in, d-e-a-t-h, the same thing goes for three yes answers.

You know the results—yes, yes, yes equals death, and I believe you've told us that there's no way you could answer those questions yes, yes, yes, knowing that it would result in anybody's death. Is that correct?

"A. That's correct, yes.

\* \* \* \* \* \*

"Q. All right. You understand that if you answer the questions all yes, so that it results in three yes answers—

"A. That would be death.

"Q. —that's death.

"A. Yes. And I told you that I couldn't do that.

"Q. All right. You can't do that. There's no way you could ever do that.

"A. I told you that.

"Q. All right. Regardless of the evidence.

"A. (Juror nods head)

\* \* \* \* \* \*

"Q. I have to go first and I had to ask you all these questions. But I gather from what you've said that it wouldn't matter if I asked you the questions or Mr. Scott asked you the questions or Mr. Harrison or Mr. Nelson asked you the questions—or anyone else asked you the questions, for that matter. Your position is simply that you could not violate your strong religious feelings— is that correct?—you could simply not put those aside and take an oath to tell the judge that you would participate in

any case that would result in anybody's death. Isn't that correct?

"A. That's correct."

In *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the United States Supreme Court applied *Witherspoon,* supra, to the Texas death penalty statute and stated:

"If the juror is to obey his oath and follow the law of Texas, he must be willing not only to accept that in certain circumstances death is an acceptable penalty but also to answer the statutory questions without conscious distortion or bias. The State does not violate the *Witherspoon* doctrine when it excludes jurors who are unable or unwilling to address the penalty questions with this degree of impartiality."

448 U.S. at 46, 100 S.Ct. at 2527.

Moreover, in *Adams,* supra, the Supreme Court set forth the standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment: "a juror may not be challenged for cause based on his views about capital punishment *unless his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Id.,* 448 U.S. at 45, 100 S.Ct. at 2526, quoted in *Wainwright v. Witt,* —— U.S. ——, 105 S.Ct. 844, at 850, 83 L.Ed.2d 841 (1985), (emphasis in original).

Based upon her testimony, prospective juror Jones indicated that she could not set aside her feelings and give answers that would result in assessment of the death penalty. She was, therefore, not excused in violation of the *Witherspoon* doctrine. See also *Brandley v. State,* 691 S.W.2d 699 (Tex.Cr.App.1985); *Bird v. State,* 692 S.W.2d 65 (Tex.Cr.App.1985); *Williams v. State,* 682 S.W.2d 538 (Tex.Cr.App.1984); *Smith v. State,* 676 S.W.2d 379 (Tex.Cr. App.1984); *Hernandez v. State,* 643 S.W.2d 397 (Tex.Cr.App.1982). Appellant's nineteenth ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in admitting into evidence the testimony of witness William Motteram concerning a robbery at a Pizza Hut committed on March 5, 1982, since it constituted evidence of an inadmissible extraneous offense.

The record reflects that, during the guilt-innocence phase of the trial, the State called William Motteram. Motteram testified that he was the assistant manager of a Pizza Hut restaurant in Garland, Texas. He stated that at 11:15 p.m., on March 5, 1982, appellant entered the restaurant, pointed a gun at Motteram's head, robbed him of $80.00 in cash, and then fled in a late model dark with light top Chrysler. Motteram testified that the gun used in the robbery looked like the gun recovered from appellant, and used in the instant offense.

The record also reflects the following sequence of events: appellant was observed getting into the Chrysler, which belonged to the decedent's father, during the late evening hours of March 4; the decedent's body was found at 7:00 a.m. on the following morning, March 5, in a field in Irving; the robbery at the Pizza Hut occurred at 11:15 p.m. on March 5; and on March 6, appellant was arrested at 2:15 a.m. in the area of the Rox-Z Club, driving the Chrysler and in possession of the gun identified by Motteram as similar to the gun used in the robbery.

Appellant contends that the evidence of the Pizza Hut robbery is inadmissible since it did not go to prove any material issue in the case. The State asserts that the evidence was relevant to the issues regarding corroboration of Kevin Long's testimony as to appellant's plan to steal a car and commit robberies, and appellant's motive.

 In *Williams v. State,* 662 S.W.2d 344 (Tex.Cr.App.1983), we set forth the test of extraneous offense evidence admissibility: such evidence is admissible first, if the transaction is relevant to a material issue in the case, and second, if the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Id.* at 346, quoting from *Elkins v. State,* 647 S.W.2d 663 (Tex.Cr.App.1983) at 665. See also

*Morgan v. State,* 692 S.W.2d 877 (Tex.Cr. App.1985); *Brandley,* supra; and *Rubio v. State,* 607 S.W.2d 498 (Tex.Cr.App.1980). In a circumstantial evidence case, the evidence's admissibility depends on the transaction's relevance to a material issue which the State must prove. *Williams,* supra at 346. See also *Mulchahey v. State,* 574 S.W.2d 112 (Tex.Cr.App.1978).

■ Evidence relevant to an accused's motive in committing an offense is admissible because it may aid in proving that the accused committed the alleged offense. *Brandley,* supra at 706. See also *Porter v. State,* 623 S.W.2d 374 (Tex.Cr.App.1981), and cases cited therein at 385–86. The evidence must, however, tend to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense. *Id.*

■ In the case at bar, Kevin Long had testified that appellant intended to steal a car and commit robberies of pharmacists. Ergo, appellant's motive to commit the crime he was indicted for was, according to the State's theory of the case, his desire to steal a car and commit robberies. The proffered evidence regarding the robbery at the Pizza Hut certainly raised an inference verifying that motive, and therefore falls within the exception to the general rule precluding admission of extraneous offenses.

■ Given that the evidence was relevant for this reason, we now turn to the balance between its probative value and its prejudicial effect. Although the evidence of the robbery did not place appellant in a positive light, the trial judge made efforts to insure that it did not serve to divert the attention of or confuse the jury: the record reflects that the court's charge to the jury contained an instruction limiting the jury's consideration of any offense other than that alleged in the indictment. Moreover, ·we have thoroughly reviewed the evidence in context with this extraneous offense and we find that its probative value outweighed its prejudicial effect. On the facts of this case, probative evidence relating to the rob-

bery at the Pizza Hut was admissible. Appellant's second ground of error is overruled.

In a related ground of error, appellant contends that the trial court erred in admitting testimony that, when appellant was arrested, the license plate found on the Chrysler was actually registered to another vehicle owned by another person. The record shows that at the time of his arrest, appellant was found driving a Chrysler Cordoba belonging to the deceased's father, Robert Hill. When the officers ran a license plate check, they found that the plates found on the Chrysler were not registered to that car; rather they were registered to a car owned by an individual living in Allen, Texas. Appellant contends that this evidence of an extraneous offense should not have been admitted.

■ Initially, the record shows that testimony establishing that the license plates attached to the Chrysler were not registered to that vehicle was admitted earlier in the trial without objection. Nothing, therefore, was preserved for review. *Brown v. State,* 640 S.W.2d 275 (Tex.Cr. App.1982), at 280 citing *Garcia v. State,* 573 S.W.2d 12 (Tex.Cr.App.1978); and *Haynes v. State,* 627 S.W.2d 710 (Tex.Cr. App.1982). See also *Crocker v. State,* 573 S.W.2d 190 (Tex.Cr.App.1978).

Even if the error were properly preserved, however, the trial court did not err in admitting the evidence. The record shows that when the State sought to question the witness from the Highway Department for the Dallas County Tax Office, appellant objected to any testimony that would show an extraneous offense of theft of an automobile. The trial court ascertained that the State would question the witness only regarding evidence showing to whom the plates were registered, and not that the vehicle was stolen. With this restriction, the witness was permitted to testify.

■ Evidence of an extraneous offense must necessarily involve evidence of

prior criminal *conduct* by the accused.[1] See *Albrecht v. State*, 486 S.W.2d 97 (Tex. Cr.App.1972). If the evidence fails to show that an offense was committed or that the accused was connected to the offense, then evidence of an extraneous offense is not established. See *Id.* See also *Baxter v. State*, 645 S.W.2d 812 (Tex.Cr.App.1983); and *Roach v. State*, 586 S.W.2d 866 (Tex. Cr.App.1979). But c.f. *Brandley*, supra at 706, and *Sanders v. State*, 604 S.W.2d 108 (Tex.Cr.App.1980). Since the evidence admitted in the case at bar did not show that the vehicle was stolen, establish that appellant stole the vehicle, nor implicate the vehicle in any misconduct, no improper extraneous offense was admitted. Appellant's third ground of error is overruled.[2]

In his sixteenth, seventeenth and eighteenth grounds of error, appellant contends that the trial court erred in admitting into evidence three letters recovered from the Chrysler when it was searched subsequent to appellant's arrest. Appellant asserts that the letters constitute inadmissible evidence of extraneous offenses.

■■■■■ The letters found in the vehicle were addressed to appellant and concerned a check returned for insufficient funds and an overdrawn bank account. Since this evidence does not establish prior misconduct, it does not constitute evidence of an extraneous transaction. See discussion, supra. Appellant's sixteenth, seventeenth and eighteenth grounds of error are overruled.[3]

In appellant's seventh ground of error, he contends that the trial court erred in permitting the prosecutor to elicit from Officer Holman that Kevin Long's written statement introduced by the defense was the same as what Long told the officer, since such evidence constituted hearsay and improper bolstering of the witness.

The record shows that Officer Holman visited Kevin Long at approximately 8:00 a.m. on March 5, 1982, at the University Park Police Department in order to conduct an interview. Later that day, at approximately 12:30 p.m., Long executed a written statement. The statement reflected that Holman had interviewed Long at 10:30 a.m., but that the statement had been given at 8:45 a.m. The discrepencies between the times given in the statement and Long's testimony were established when appellant's counsel cross-examined Long.

On re-direct, the State attempted to clarify the time discrepencies and recalled Officer Holman to the stand. He testified that Long had given him information at about 8:30 a.m., and that Holman had been present when Long executed the written statement. The record reflects the following testimony:

"A. All right. Now, Sergeant, I want you to read that over, and I'll ask you whether that is substantially the same thing that he told you at between 8:30 and 9:00 o'clock in the morning of March the 5th, 1982?

"MR. NELSON: Objection to that, Your Honor. That calls for hearsay, and it also would be improper bolstering.

"THE COURT: Sustained, Rephrase your question.

"Q. (By Mr. Kinne) All right, what did he tell you the morning of March the 5th, 1982?

"MR. NELSON: Objection as to hearsay.

"THE COURT: Sustained as to hearsay.

"Q. *(By Mr. Kinne) Well, is what's in that statement what he told you?*

"MR. NELSON: Again calling for hearsay.

"THE COURT: Overruled.

---

1. Emphasis added unless otherwise indicated.

2. This evidence regarding license plate registration was relevant to the issue of vehicle ownership, and was therefore relevant to the State's overall proof that the vehicle stolen by appellant belonged to Robert Hill. The evidence appellant complains of did not by itself, however, establish that the vehicle was stolen. Thus, no proof of an inadmissible extraneous transaction was admitted through the testimony regarding vehicle registration.

3. This evidence was certainly relevant to show appellant's connection with the vehicle, but did not of itself, establish criminal conduct.

"MR. NELSON: Well, again bolstering, then, Your Honor.

"THE COURT: Overruled.

"A. *(Witness examines exhibit) That's correct.*

"Q. (By Mr. Kinne) All right, sir. Let me ask you, the first sentence there I believe says something to do with about 10:30 a.m. Now, he told you this information, the body of the statement, I take it, I think you have testified between 8:30 and 9:00 o'clock. Is that right?

"A. That's correct.

"Q. So that 10:30 part there is in error?

"A. That is correct."

(Emphasis added.)

▆▆▆ We will first address appellant's contention that the complained of testimony was inadmissible hearsay. "Hearsay" is defined as an out of court statement offered for the truth of the matter asserted. *Phenix v. State*, 488 S.W.2d 759 (Tex.Cr.App.1972), at 761 citing McCormick, J., *Evidence*, § 225 at 460; and *Salas v. State*, 403 S.W.2d 440 (Tex.Cr.App.1966).

An out of court statement offered for the purpose of showing what was said rather than the truth of the matter stated therein does not, however, constitute hearsay. *Porter v. State*, 623 S.W.2d 374 (Tex.Cr. App.1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982). See also *Nixon v. State*, 587 S.W.2d 709 (Tex.Cr. App.1979); *Gholson v. State*, 542 S.W.2d 395 (Tex.Cr.App.1976), *cert. denied*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977).

▆▆▆ In the instant case, the State's attorney asked Holman whether the written statement was what Long had told him. The question was not directed toward proving the truth of what Long had told Holman; rather, the question was directed toward establishing whether the written statement comported with what Long had said. The evidence was not, therefore, hearsay.

▆▆▆ Moreover, the evidence did not constitute improper bolstering. "Bolster-

ing" occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier *unimpeached* piece of evidence offered by the same party. *Pless v. State*, 576 S.W.2d 83 (Tex.Cr. App.1978), at 84 citing as example *Lyons v. State*, 388 S.W.2d 950 (Tex.Cr.App.1965); *Acker v. State*, 421 S.W.2d 398 (Tex.Cr. App.1967); and *Frison v. State*, 473 S.W.2d 479 (Tex.Cr.App.1971). Since appellant had impeached Long with the time discrepencies, Holman's testimony did not add weight to but rather rehabilitated Long's testimony. No error is shown. Appellant's seventh ground of error is overruled.

In ground of error number five, appellant contends that the trial court erred in admitting a statement made by appellant after he was arrested because the statement was obtained by the exploitation of an illegal arrest.

The facts relevant to this ground are as follow. On March 5, 1983, after Kevin Long told the police what appellant had related to him concerning the murder, the police obtained a warrant for appellant's arrest. At 2:15 a.m., on March 6, 1983, police officers observed appellant driving in the area of the club where the deceased had been abducted. Believing appellant to be armed and dangerous, the officers exited their car with their guns drawn. At that time, appellant stated something to the effect that he knew the officers were looking for him.

As these facts were developed, the record reflects the following testimony:

[Questions by Prosecutor]

"Q. What did you do then when you approached the vehicle?

"A. The defendant, David McKay, had his hands up—

"[Defense Counsel]: Your Honor, at this time we would object to any statements made by the defendant, or any allusions to any statements made by the defendant by this witness, as at this time the defendant was under arrest. We object to it.

"THE COURT: All right, overruled.

"[Prosecutor]: All right, go ahead.

"A. We went ahead and approached the vehicle, and he had his hands up—

"Q. Now, this is three of you—

"A. Yes, sir.

"Q. —saying 'Police,'' what?

"A. Yes, sir.

"Q. Got your guns out?

"A. We're all screaming 'Police!' We all had our weapons out, yes, sir.

"Q. All right. And he's got his hands up?

"A. Yes, sir.

"Q. Did he say anything right then and there?

"[Defense Counsel]: Your Honor, we're going to object to any statements made by the defendant at this point, his having been placed under arrest and no showing that any warnings of any type have been given to him at this time.

"THE COURT: Question calls for a yes or no answer. Overruled.

"Q. Did he or did he not say anything at that point in time?

"A. Yes, sir, he did.

"[Prosecutor]: We submit that this statement is res gestae of the arrest.

"[Defense Counsel]: To which we object, Your Honor. These are police officers, arresting somebody, a warrant has already been issued for his arrest. We'd object to any statements that the officer may allude to at this time without proper warning.

"THE COURT: Overruled.

"Q. What did he say at that point in time?

"A. Best I recall, something to the effect he knew we was looking for him."

In his brief, appellant argues that the statements are inadmissible because the ar-

rest was illegal. According to appellant, the arrest is illegal because the arrest warrant was not admitted in trial. There is no dispute that an arrest warrant was issued after Kevin Long told the police what appellant had told him.

In his brief, appellant contends that when an arrest is challenged, the State must produce the arrest warrant for the court's inspection, citing *Dowdy v. State*, 534 S.W.2d 336 (Tex.Cr.App.1976); and *Cannady v. State*, 582 S.W.2d 467 (Tex.Cr. App.1979).[4] Appellant contends that since the State did not present the warrant at trial, the arrest is illegal.

■■■■ Before the State is required to produce the warrant, however, the arrest must be properly challenged. The legality of the arrest was not raised by appellant's motions to suppress evidence. The first motion was directed at suppression of an interview conducted after appellant was arrested and taken to the Dallas County Jail. A second motion to suppress was filed objecting to the search of two vehicles conducted after appellant was arrested; however, no mention was made concerning the legality of the arrest. The objections made at trial as reflected by the preceeding testimony do not raise the issue as to the legality of the arrest so that the State's failure to present the warrant constitutes reversible error. Absent preservation, no error is presented for review. See *Crocker*, supra.

■■■ Even if the error were properly preserved, the trial court did not err in admitting the statement since it was not the product of custodial interrogation, see *East v. State*, 702 S.W.2d 606 (Tex.Cr.App. 1985) and *Cannon v. State*, 668 S.W.2d 401 (Tex.Cr.App.1984), but was rather admissible as the res gestae of the arrest. See

---

**4.** The cases cited by appellant do not support his argument. In *Dowdy*, the defendant was arrested without a warrant. In *Cannady*, we held that when a defendant objects to admission of evidence on the ground that it was illegally seized and the State relies on a search warrant, in the absence of waiver, reversible error will result unless the record reflects that the warrant was

exhibited to the trial judge, citing *Vines v. State*, 397 S.W.2d 868 (Tex.Cr.App.1966). *Cannady*, supra at 469, other citations omitted. In *Vines*, the defendant made a timely objection to the search, which was overruled by the court, and the State failed to produce the warrant. We held that the objection should have been sustained and reversed the case.

*Mitchell v. State,* 650 S.W.2d 801 (Tex. Cr.App.1983). Appellant's fifth ground of error is overruled.

In his sixth ground of error, appellant contends that the trial court erred in overruling his motion for mistrial, as the jury was permitted to hear testimony concerning the seizure of eleven rounds of .380 ammunition found in appellant's pocket after his allegedly illegal arrest. The record reflects the following testimony:

[Questions by Defense Counsel]

"Q. All right. I take it that this search was made pursuant to the arrest warrant that you had; is that correct?

"A. Yes, sir, it is.

"Q. Do you have that arrest warrant with you now?

"A. No, sir, I don't.

"Q. Do you have it anywhere here within the building or anything?

"A. I don't personally, no, sir.

"Q. Do you have a copy of it back at your office or anywhere?

"A. I don't think I have a copy of the arrest warrant itself.

"[Defense Counsel]: Your Honor, we would object to State's Exhibit Number 56. In particular to this card which contains hearsay, that there has been no chain of custody, no identifying characteristics of the rounds reportedly taken from the defendant. Further, we would object to any evidence taken from this defendant, since the State has failed to prove at this point that it was conducted pursuant to a valid arrest warrant.

"THE COURT: How are you identifying that exhibit?

"THE WITNESS: The only thing I did was I took it straight to Investigator Cheek and turned it over to him.

"THE COURT: I didn't ask you what you did with it, I said how are you identifying that exhibit?

"THE WITNESS: I don't have any marks on there. I can't positively identify those as being the same.

"THE COURT: Objection is sustained."

In this ground of error, appellant asserts that these statements constitute an appropriate objection to the arrest warrant, and that the "careful trial court" sustained the objection on this ground. The record shows that there were three objections made at one time: hearsay, chain of custody, and insufficient evidence of a valid arrest warrant. The trial court sustained the objection to the evidence on the chain of custody objection. Thus, the arrest warrant objection was never considered, discussed, or ruled upon. As such, this objection did not preserve the issue of the validity of the warrant.

■ We have searched the record and have found only one "attempt" by appellant's counsel to obtain the warrant. The record reflects that during the defense cross-examination of Officer Alford, who was present when Long gave his statement, the following discussion took place:

"Q. All right. Sergeant, would you have a copy of the arrest warrant somewhere?

"A. I don't have one, no, sir.

"Q. Where could we get a copy of it?

"A. I believe Judge Chandler is the one that issued the warrant, and he would have the—

"Q. Sir, who? I'm sorry.

"A. Judge Chandler. John Chandler.

"Q. And where is he located?

"A. Irving Municipal Court.

"Q. All right. Did you get the search— did you get the arrest warrant yourself?

"A. No, sir, I did not.

"Q. Who did?

"A. I believe it was Sergeant Jobe.

"Q. Sergeant Jobe?

"A. Yes, sir.

"Q. All right. And do you know when he got that arrest warrant?

"A. Somewheres around 2:00 o'clock, best I recall.

"Q. All right.

"[Defense Counsel]: Your Honor, we would ask the Court to see if we can get a copy of that arrest warrant.

"[Prosecutor]: Now, Your Honor, he's a lawyer. He knows how to get a copy of the arrest warrant.

"[Defense Counsel]: Well, Judge, I—we think we would be entitled to see the arrest warrant if he thinks—certainly the Irving Police Department can tell us where they got it and who got it and when they got it. I may be a lawyer, but—

"[Prosecutor]: Public record. He—

"[Defense Counsel]: There are about fifty magistrates in Dallas County, Your Honor.

"THE COURT: I've heard him relate where it is, so ...

"[Defense Counsel]: All right.

"Q. (By [Defense Counsel]); Your're sure Judge Chandler has it?

"A. Yes, sir.

"Q. All right, thank you.

"[Defense Counsel]: Pass the witness."

This testimony fails to preserve objection to the arrest or arrest warrant since no specific objection to the arrest or arrest warrant was made, appellant's counsel failed to obtain a ruling on his request to "get a copy" of the warrant, and last, no further effort was made to obtain the warrant. Therefore, the legality of the arrest warrant was never properly raised or preserved.

■ Even if the error had been properly preserved, no harm is shown since the court did not admit the evidence and instructed the jury to disregard testimony concerning the evidence. Generally, any error resulting from improper testimony is cured by an instruction to disregard the same except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *Carey v. State,* 537 S.W.2d 757 (Tex.Cr.App.1976), at 759. See also *Brown v. State,* 692 S.W.2d 497 (Tex. Cr.App.1985). We find that the testimony regarding .380 ammunition was of such a character that any error arising from its

mention was cured by the court's instructions to disregard. Appellant's sixth ground of error is overruled.

In eight separate grounds of error, appellant objects to statements made by the prosecutor during closing arguments to the jury. In his eighth ground, appellant claims that the prosecutor committed reversible error when, during the guilt/innocence stage of trial, the prosecutor stated: "[T]hat is a moral vacuum. He has no conscience, no heart, no recognition of right or wrong. You are perched on the rim of hell, looking deep into it." The trial court overruled appellant's objection to the statements on the grounds that they were outside the record.

■ Proper jury argument must fall within one of four general areas: summation of the evidence; reasonable deduction from the evidence; answer to argument of opposing counsel; and pleas for law enforcement. *Franklin v. State,* 693 S.W.2d 420 (Tex.Cr.App.1985), at 429 citing *Cannon,* supra; *Denison v. State,* 651 S.W.2d 754 (Tex.Cr.App.1983); *Kerns v. State,* 550 S.W.2d 91 (Tex.Cr.App.1977); and *Thomas v. State,* 519 S.W.2d 430 (Tex.Cr.App.1975). In order to constitute reversible error, the jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence. *Kerns,* supra at 96, citing *Thomas,* supra.

■ Our reading of the record as a whole fails to reveal that the above statements by the prosecutor were manifestly improper or interjected new facts into evidence which were harmful to appellant. Appellant's eighth ground of error is overruled.

In his ninth ground of error, appellant contends that the prosecutor committed reversible error by injecting his personal opinion during the final arguments of the guilt/innocence stage of trial. The prosecutor stated: "[N]ow who is the expert? You look. You look. You tell me, did not that boot make that print? If so [sic-not?], why not? *Looks like it to me."* The trial court sustained defense counsel's objection

on the grounds that the statement was outside the record, and instructed the jury to disregard.

 Initially, as was stated in *Ramos v. State,* 419 S.W.2d 359 (Tex.Cr.App. 1967), it is well settled that the prosecutor may argue his opinions concerning issues in the case so long as the opinions are based on the evidence in the record and not as constituting unsworn testimony. *Id.* at 368, citing *Van Skike v. State,* 388 S.W.2d 716 (Tex.Cr.App.1965); *Johns v. State,* 249 S.W.2d 61 (Tex.Cr.App.1952); and *Vineyard v. State,* 96 Tex.Cr.R. 401, 257 S.W. 548 (1922). The complained of argument in *Ramos,* supra, was "[N]ow if you do not believe that man was intoxicated, you go back there and say not guilty and I would have to say that you must be the stupidest. . . ." In the present case, we view the argument as the prosecutor's opinion of the evidence and not as constituting unsworn testimony, especially since the prosecutor was not arguing that he possessed any special expertise and the jurors, who had the exhibits before them for their own perusal, were invited to make their own comparison.

 Moreover, even if the argument was improper, we find that the trial court's instructions to disregard were sufficient to cure any harm inuring to appellant. Ordinarily, any injury from improper jury argument is obviated when the court instructs the jury to disregard, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment. *Brown,* 692 S.W.2d at 502, citing *Blansett v. State,* 556 S.W.2d 322 (Tex.Cr.App.1977). The statements in the instant case were not so inflammatory so as to constitute reversible error. Appellant's ninth ground of error is overruled.

In grounds of error numbers ten and eleven, appellant contends that the prosecutor committed reversible error by commenting upon appellant's failure to testify. During the guilt/innocence stage of trial, the prosecutor stated: "[A]nd he asked me to get up and exclude that [someone else committed the murder] as a reasonable hypothesis. There is no evidence to that effect." The prosecutor later stated: "[T]here is no evidence of any phantom. When this defendant abducted . . . the deceased in this case from the parking lot, he was alone . . . There is no testimony to the contrary. He's by himself." Defense counsel objected to both statements on the ground that they were improper comments upon appellant's failure to testify. The trial court overruled both objections.

 Impermissible comment upon an accused's failure to testify is made when the language used is manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. *Paster v. State,* 701 S.W.2d 843, 849 (Tex. Cr.App.1985), citing *Johnson v. State,* 611 S.W.2d 649 (Tex.Cr.App.1981); and *Griffin v. State,* 554 S.W.2d 688 (Tex.Cr.App.1977). It is not sufficient that the language implies or alludes to the failure to testify: the language must necessarily refer to the failure to testify. *Bird v. State,* 527 S.W.2d 891 (Tex.Cr.App.1975). The statements made in the instant case did not necessarily refer to appellant's failure to testify.

Moreover, in the instant case, appellant's counsel argued that someone other than appellant had committed the murder. The prosecutor's statements were invited by the argument of appellant's counsel. See *Franklin,* supra, at 429 citing *Holloway v. State,* 525 S.W.2d 165 (Tex.Cr.App.1975) at 169; and *De La Rosa v. State,* 658 S.W.2d 162 (Tex.Cr.App.1983). See also *Smith v. State.* 635 S.W.2d 591 (Tex.App.1982). Grounds of error numbers ten and eleven are overruled.

 In grounds of error twelve and thirteen, appellant contends that the prosecutor committed reversible error when he twice referred to appellant as a "wolf". Appellant's objections to the references were overruled. We have examined the record of this particularly cold-blooded and unwarranted killing and find that the prosecutor's references were proper deductions based upon the evidence. See *Burns v.*

*State,* 556 S.W.2d 270 (Tex.Cr.App.1977), *cert. denied,* 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977). Both grounds of error are overruled.

In appellant's fourteenth ground of error, he asserts that the prosecutor committed reversible error when he referred to parole probabilities. During the punishment phase of trial, in arguing for the death penalty the prosecutor stated: "[D]o you want to run a business? Do you want to go to a parking lot at night? Do you want to run a drugstore? A Pizza Hut? With him back on your streets? Or is there a probability...." Defense counsel then objected on the ground that the argument obviously called upon the jury to deliberate on how long the defendant would serve any sentence imposed. The trial court overruled the objection.

Certainly it is improper for a prosecutor to urge the jury to consider the length of time a defendant would actually be required to serve given any punishment the jury might impose. *Clark v. State,* 643 S.W.2d 723 (Tex.Cr.App.1982) and cases cited therein at 724. See also *Hodge v. State,* 631 S.W.2d 754 (Tex.Cr.App.1982), and cases cited therein at 756.

Since the jury had only two punishment alternatives, life in prison or death, the prosecutor's reference to placing appellant "back on the streets" was a reference to parole. Thus, the argument was improper.

Not every improper argument made during final remarks to the jury, however, requires reversal of the case. In order to constitute reversible error, the argument must be examined in light of the entire record and must be extreme or manifestly improper, violative of a mandatory statute or inject new facts harmful to the accused into the trial proceedings. *Franklin,* supra, at 425 and cases cited therein. We have examined the record in the instant case and find that the remarks made by the prosecutor, although improper, did not constitute reversible error. Appellant's fourteenth ground of error is overruled.

In ground of error number fifteen, appellant asserts that the prosecutor committed reversible error during his argument at the punishment stage of trial by misstating the law. The prosecutor stated: "[A]nd let me tell you, I can't have this man examined by Dr. Griffith, just for the purpose of answering that question. I can't do that, or I would have. Mr. Nelson said why didn't I have him examine him. Because the law doesn't allow me to." Appellant's counsel objected on the ground that the argument was a misstatement of the law, but the trial court overruled the objection.

Appellant concedes that there was no issue raised as to appellant's competency to stand trial or his sanity at the time of the offense. As such, there was no vehicle by which the State could have had the court appoint a psychiatrist to examine appellant. Cf. Art. 46.02, V.A.C.C.P., and Art. 46.03, V.A.C.C.P. Thus, the law does not permit the State to have a psychiatrist appointed for the purpose of examining the defendant for evidence relating solely to his future dangerousness. The prosecutor was not misstating the law.

Moreover, even if appellant had been examined, he could have prevented the State from using the evidence obtained by claiming his Fifth Amendment right against self-incrimination. *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Appellant's fifteenth ground of error is overruled.

In ground of error number four, appellant contends that the prosecutor committed reversible error by improperly referring to appellant's failure to testify. The record reflects that during the punishment stage of trial, when appellant's counsel was questioning appellant's mother, the following discussion took place:

[Questions by Defense Counsel]

"Q. Well, whether it was in Irving or here in the Dallas County Jail, did you have a chance to ask him about what had transpired?

"A. Yes, I did.

"Q. What did he tell you in that regard?

"[Prosecutor]: *Excuse me, Judge, I will object to this, in that it's indirectly trying to do what they cannot do directly without the defendant's testimony.* (Emphasis added.)

"[Defense Counsel]: Well, Your Honor, first of all, we object to the comment on the failure of the defendant to testify.

Secondly, they brought in all sorts of conversations that the defendant's [sic] had with other witnesses. We want to bring in a conversation that the defendant had with this witness.

"THE COURT: Your objection is to hearsay?

"[Prosecutor]: Yes, sir.

"THE COURT: Sustained.

[Defense Counsel]: As to conversations between the defendant and a witness?

"THE COURT: Yes, sir.

[Defense Counsel]: We'd also have an objection as to the comment on the failure of the defendant to testify.

"THE COURT: Overruled."

As stated before, in order to constitute an impermissible comment upon a defendant's failure to testify, the language used must be manifestly intended or of such a character that the jury would naturally and necessarily take it to be such a comment. *Paster,* supra; *Bird,* 527 S.W.2d at 894 and cases cited therein. See also *Nickens v. State,* 604 S.W.2d 101 (Tex.Cr.App.1980) (opinion on State's Motion for Rehearing).

Taken in the context in which it was made, the statement was not a comment on appellant's failure to testify. The trial court did not take it as such, but rather interpreted it as a hearsay objection. The record also reflects that the trial court's charge to the jury contained an instruction that they were not to consider appellant's failure to testify for any purposes. No error is shown. Appellant's fourth ground of error is overruled.

 In his first ground of error, appellant claims that the Texas capital punishment procedure violates the Eighth and Fourteenth Amendments to the United States Constitution as it does not permit this Court to conduct a comparative proportionality review. Appellant's contention was decided adversely to him in *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Appellant's first ground of error is overruled.

In ground of error number twenty, appellant asserts that the State systematically excluded blacks and Mexican Americans from the jury in violation of the due process and equal protection rights under the United States and Texas Constitutions. Appellant fails to direct us to any evidence in the record concerning the composition of the jury panel from which the jurors were selected, nor has our examination of the record disclosed any such evidence. Without such evidence, no error is shown. See *Evans v. State,* 622 S.W.2d 866 (Tex.Cr.App.1981).

 Moreover, the evidence to which appellant does refer concerns the State's exercise of its peremptory challenges. The mere use of peremptory challenges to strike qualified minority persons from the jury is not a prohibited systematic exclusion of those persons in the selection of petit juries. *Id.* See also *Chambers v. State,* 568 S.W.2d 313 (Tex.Cr.App.1978), and cases cited therein at 328. Appellant's final ground of error is overruled.

The judgment of the trial court is affirmed.

TEAGUE, J., dissents.

CLINTON, Judge, dissenting.

While there is a great deal in the opinion of the Court with which I cannot agree, I would be content simply to dissent but for the majority's overruling the second ground of error on a theory that evidence revealing the extraneous robbery offense is "relevant as rehabilitation evidence for the testimony of Kevin Long." If there is authority for that proposition, it ought to be cited.

When *Williams v. State,* 662 S.W.2d 344 (Tex.Cr.App.1983), speaks of "relevance to

a material issue the State must prove" in a circumstantial evidence case, *id.,* at 346, it and the cases cited make clear that "issue" means such matters as motive, intent and design, *Etchieson v. State,* 574 S.W.2d 753, 760 (Tex.Cr.App.1978) and *Mulchahey v. State,* 574 S.W.2d 112, 117 (Tex.Cr.App. 1978), or identity, *Jones v. State,* 568 S.W.2d 847, 858 (Tex.Cr.App.1978).[1]

Just as clearly, in *Caldwell v. State,* 477 S.W.2d 877, 879 (Tex.Cr.App.1972), the Court rejected the theory advanced by the majority opinion in this cause, *viz:*

> "To hold that the cross-examination of this [complainant] would permit the introduction of an extraneous offense would be tantamount to holding that such testimony would be admissible in *any case where defendant's counsel exercised the constitutional right of cross-examination. This is not and should not be the law.*" [Emphasis added]

Accordingly, I dissent.

TEAGUE, J., joins.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

▮ On original submission we overruled Appellant's second ground of error, concerning the admission of an extraneous offense, for two reasons. On motion for rehearing appellant contends that we erred in doing so. He complains, as did Judge Clinton in the dissent on original submission, that cross-examination of a witness cannot alone be justification for the admission of an extraneous offense and thus our opinion is wrong when it states that the extraneous offense was "relevant as rehabilitation evidence for the testimony of Kevin Long". *Caldwell v. State,* 477 S.W.2d 877 (Tex.Cr.App.1972). We agree, and that portion of the original opinion has been excised. We do not agree however that the extraneous offense was not admis-

sible to show motive, as also contended by appellant. Thus appellant's second ground of error was properly overruled on original submission.

We have examined the remainder of appellant's contentions in his motion for rehearing and find them to be without merit.

Appellant's motion for rehearing is overruled.

CLINTON and TEAGUE, JJ., dissent.

*Morgan v. State,* 692 S.W.2d 877 (Tex.Cr.App. 1985), the Court pointed out, "There is no conceptual necessity to differentiate between circumstantial and direct evidence in determining the admissibility of extraneous acts of misconduct," *id.,* at 879–880, n. 2.

---

1. While some opinions have drawn a distinction between cases proved by direct evidence and those proved by circumstantial evidence, based on what seems to be simply loose language in *Etchieson* and *Mulchahey,* supra, as well of the formulation in *Jones,* supra, just recently in