

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-223-CR

LARRY DALE MCCLENNY                                                APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury found Appellant Larry Dale McClenny guilty of possession of a controlled substance, methamphetamine (4–200 grams), and assessed his punishment at eight years' confinement and a fine of $2,500. The trial court sentenced him accordingly. In seven points, McClenny complains that the State failed to provide him timely notice of its intent to introduce evidence of

---

[1] *See* Tex. R. App. P. 47.4.

extraneous acts, that the State made improper jury arguments at both the guilt-innocence and punishment stages of trial, that the trial court erroneously introduced evidence of a plea in bar resolution at the punishment stage of trial, and that the evidence is legally and factually insufficient. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Around 6:00 one morning, McClenny called Christopher Swink and asked Swink if he wanted to buy some "dope." Swink drove to McClenny's motel room, where McClenny sold him approximately one gram of methamphetamine, and the two smoked some "speed." McClenny then asked Swink to drive him to a game room located about fifteen minutes away from McClenny's motel room. On the way to the game room, the men noticed a police car following them so Swink parked in the game room parking lot, and they quickly ran into the building.

While the men were in the game room, Deputy John Kiefer ran Swink's license plate and discovered that Swink had an outstanding warrant for a traffic ticket. Deputy Kiefer parked his car around the corner from the game room and waited for Swink to exit.

Swink and McClenny stayed in the game room for about ten minutes. Once they thought the police car had left, they left the game room to go to

2

another nearby game room. They drove to the second game room, and as the men were exiting the truck, Deputy Kiefer pulled in behind Swink's truck.

Deputy Kiefer told Swink to walk towards him. The deputy noticed that McClenny, who was standing on the passenger side of the truck inside the open door, was leaning into the truck and making furtive movements in the passenger side of the truck. Deputy Christopher Williamson arrived to assist Deputy Kiefer, and Deputy Kiefer instructed him to watch McClenny because he was moving around. Deputy Williamson also observed McClenny reach inside the truck through the open passenger door. The deputy "glanced" in the open passenger door and saw a marijuana roach on the passenger floorboard and a black wallet stuffed in between the seat cushion and the backrest cushion of the passenger seat. Deputy Williamson patted down McClenny and told him to stand at the rear of the truck.

Deputy Kiefer arrested Swink for the outstanding warrant and conducted a search of his person incident to arrest. He found a pipe, about one gram of crystal methamphetamine, and a bag of marijuana on Swink's person. He then searched Swink's truck and found a marijuana roach laying on the passenger floorboard and a glass pipe under the passenger seat. He also found two small containers, a yellow and silver container and small black bag, stuffed between the seat cushion and backrest of the passenger seat. The containers contained

3

over four grams of methamphetamine. One container also had a Motorola cellular phone battery inside. The deputies then arrested McClenny.

After jury selection, the State gave oral and written notice to McClenny that it intended to call Swink to testify that McClenny had sold him drugs an hour before the men were arrested. McClenny objected that the State did not provide him adequate notice of its intent to introduce evidence of this extraneous offense. The State argued that it did not inform McClenny prior to trial that Swink would be a witness because it did not talk to Swink until the day before trial. The State further argued that Swink's testimony was admissible as same transaction evidence and to rebut McClenny's defensive theory that the drugs belonged to Swink. The trial court permitted Swink to testify and granted the defense a running objection to his testimony.

Swink testified that McClenny called him to ask if he wanted to buy some drugs, that Swink agreed and purchased some "speed" from McClenny, and that he then drove McClenny to the two game rooms before they both were arrested. Swink also testified that after they were arrested and in the squad car together, he asked McClenny, "[W]hat did you do with your dope[?]" to which McClenny responded, "Don't worry about it. I hid it."

The State also called Deputies Kiefer and Williamson to testify about the arrest and search and called a forensic chemist who presented expert testimony

4

that the substances found in the two containers in Swink's truck contained methamphetamine.

### III. EXTRANEOUS BAD ACTS EVIDENCE

In McClenny's first point, he contends that the trial court erred by allowing Swink to testify that McClenny sold Swink drugs shortly before they were arrested because the State did not provide timely notice of its intent to introduce this evidence in accordance with Texas Rule of Evidence 404(b). *See* Tex. R. Evid. 404(b) (requiring reasonable notice in advance of trial of State's intent to introduce extraneous offense evidence). The State does not contend that the notice was timely but argues that it was not required to give notice under rule 404(b) because the evidence was admissible as same transaction contextual evidence and because it was offered to rebut McClenny's defensive theory. Alternatively, the State argues that any error was harmless.

We will assume, without deciding, that the trial court erred by admitting Swink's testimony that McClenny sold him drugs the day of McClenny's arrest and apply a harm analysis. Error in admitting evidence with insufficient notice under rule 404(b) is nonconstitutional error. *See Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005); *Allen v. State*, 202 S.W.3d 364, 369 (Tex. App.—Fort Worth 2006, pet. ref'd). Therefore, we apply rule 44.2(b) and disregard the error if it did not affect McClenny's substantial rights.

5

Tex. R. App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref'd).

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall*, 961 S.W.2d at 643. Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

The lack of notice under rule 404(b) is harmful if the complained-of evidence affected the defendant's ability to mount an adequate defense. *See Hernandez*, 176 S.W.3d at 825–26. A defendant may demonstrate surprise by showing how his defense strategy might have been different had the State explicitly notified him that it intended to offer the extraneous offense evidence. *Id.* at 826; *Allen*, 202 S.W.3d at 369. In determining whether evidence had a substantial influence on the verdict, we review the record as a whole. *See Johnson*, 967 S.W.2d at 417.

6

In this case, McClenny made no argument at trial, and makes no assertion on appeal, that he was "surprised" by the State's decision to call Swink to testify that he purchased drugs from McClenny about an hour before their arrests. *See Hernandez*, 176 S.W.3d at 825. Further, McClenny failed to make any showing of how his defense strategy might have been different had the State explicitly notified him that it intended to offer the complained-of testimony at trial or how his defense was "injuriously" affected by the State's failure to provide reasonable notice. *See id.* at 826. After receiving oral notice on the day of trial, McClenny did not move for a continuance of the trial. During cross-examination of Swink, McClenny's defense attorney successfully established that Swink had hoped he could get his sentence "cut in half" by testifying against McClenny. Swink testified on cross-examination that his attorney had told him the night before McClenny's trial that McClenny "was trying to blame all the dope on me" and that he "didn't feel good [about that] at all."

We conclude that, in the context of the entire case against McClenny, the trial court's error, if any, in admitting Swink's testimony did not have a substantial or injurious effect on the jury's verdict and did not affect McClenny's substantial rights. *See id.* at 825–26; *King*, 953 S.W.2d at 271.

7

Thus, we disregard any error. *See* Tex. R. App. P. 44.2(b). We overrule McClenny's first point.

## IV. JURY ARGUMENT

McClenny's second, third, and fourth points complain of alleged improper arguments made by the State in its closing argument at both the guilt-innocence and punishment stages of trial.

### A. Law on Jury Argument

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the record as a whole. *Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim App. 2002).

### B. Jury Argument at Guilt-Innocence Stage not Improper

McClenny complains in his second and third points that the trial court erred by denying his requests for mistrials when the prosecutor asserted her

8

personal opinion during closing argument at the guilt-innocence stage of trial.

During closing argument, the prosecutor stated,

> So we have brought you everything, even officers who couldn't remember anything and even a codefendant who our case doesn't depend on. But we wanted to give you the big picture, everything we have. And that's what you have. We don't have anything to hide *because we know and the evidence shows that –* [Emphasis added.]

The trial court sustained McClenny's objection "to what the prosecutor knows," instructed the jury to disregard the comment, but denied McClenny's motion for mistrial. The prosecutor continued, "We believe and it's –," to which McClenny again objected that the comment was improper. The trial court instructed the prosecutor to base her comments on the testimony rather than personal belief and denied McClenny's second motion for mistrial.

It is well settled that the prosecutor may argue her opinions concerning issues in the case so long as the opinions are based on the evidence in the record and do not constitute unsworn testimony. *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 871 (1986); *Sikes v. State*, 500 S.W.2d 650, 652 (Tex. Crim. App. 1973); *Penrice v. State*, 716 S.W.2d 107, 109 (Tex. App.—Houston [14th Dist.] 1986, no pet.).

Here, although the prosecutor did not complete either of the complained-of arguments before McClenny objected, the context of her argument

9

demonstrates that she was attempting to state her opinion, based upon the evidence in the record, that the drugs found in the passenger side of Swink's truck belonged to McClenny. She made these statements at the end of her closing statement, after summarizing the evidence, and in the context of an analysis of the evidence. *See Sikes*, 500 S.W.2d at 652; *see also Thiboult v. State*, No. 02-06-00449-CR, 2008 WL 45757, at *4–5 (Tex. App.—Fort Worth Jan. 3, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that prosecutor's opinion that defendant was guilty was proper when given in context of analysis of the evidence). Moreover, the complained-of statements did not inject new facts into evidence that were harmful to McClenny, nor were they manifestly unjust, nor did they indicate that the prosecutor possessed independent facts of McClenny's guilt that were not introduced into evidence. *See Jones v. State*, 843 S.W.2d 92, 100 (Tex. App.—Dallas 1992, pet. ref'd); *Penrice*, 716 S.W.2d at 109. Consequently, the prosecutor's incomplete arguments were not improper or harmful even though the trial court sustained McClenny's objections to them. *Accord McKay*, 707 S.W.2d at 37.

Finally, even if the arguments were improper, we hold that the trial court's instructions to disregard them were sufficient to cure any harm inuring to McClenny. *See id.* Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, i.e., "so prejudicial that

10

expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *see Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied,* 542 U.S. 905 (2004). The arguments in the instant case, in any event, were not so incurable as to require a mistrial. We overrule McClenny's second and third points.

## C. Jury Argument at Punishment Stage not Improper

In McClenny's fourth point, he argues that the trial court erred by overruling his objection to the prosecutor's closing argument at the punishment stage of trial. The State contends that the prosecutor's argument was invited by defense counsel's closing argument and, consequently, that the prosecutor's argument was justified and permissible as an answer to the argument of opposing counsel.

At the punishment stage of trial, the State introduced evidence that McClenny previously had pleaded guilty to three felony offenses. During defense counsel's closing argument, he argued that the three prior guilty pleas were all pursuant to plea bargains and that the State had agreed to minimal jail time as part of the plea bargains. Consequently, he argued that because the State had agreed to lenient sentences in McClenny's past cases, McClenny should receive a low sentence in this case. During the State's closing

11

argument, the prosecutor explained that if the State makes a plea bargain offer, the offer is "usually lower than we think a jury is going to give a person." Defense counsel objected that "the prosecutor is interjecting her personal feelings in the case," and the trial court overruled his objection.

Answering opposing counsel's argument is not improper jury argument. *Felder*, 848 S.W.2d at 94–95; *Alejandro*, 493 S.W.2d at 231. If defense counsel invites the argument, then the State is allowed to respond to the defense counsel's argument. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex. Crim. App. 1987); *Lasher v. State*, 202 S.W.3d 292, 298 (Tex. App.—Waco 2006, pet. ref'd).

Here, after defense counsel informed the jury that the State had agreed to lower sentences in McClenny's past cases, the prosecutor offered an explanation as to why the State would agree to a lenient sentence in a plea-bargained case. By explaining that the State's plea bargain offer is "usually lower than we think a jury is going to give a person," the prosecutor was responding to defense counsel's argument. Thus, we hold that the prosecutor's argument was permissible because defense counsel opened the door by his argument and that the trial court did not err by overruling McClenny's objection. *See Albiar*, 739 S.W.2d at 362; *Lasher*, 202 S.W.3d at 298. We overrule McClenny's fourth point.

12

## V. ADMISSION OF PLEA IN BAR RESOLUTION

In McClenny's fifth point, he contends the trial court erred by admitting State's Exhibits 8 and 10 into evidence during the punishment stage of the trial. State's Exhibit 8 was a plea in bar resolution of the offense of driving with a suspended license, and State's Exhibit 10 was a plea in bar resolution of the offense of forgery by possession of a check with intent to pass. McClenny objected to these exhibits because they were not final convictions but were pleaded and barred pursuant to section 12.45 of the Texas Penal Code. *See* Tex. Penal Code Ann. § 12.45 (Vernon 2003).

## A. Standard of Review

This court reviews the trial court's decision to admit evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm its decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court's decision must be reasonable in view of all relevant facts. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar

13

circumstance does not demonstrate that an abuse of discretion has occurred. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

## B. Admissibility of Plea in Bar Evidence at Punishment Stage

Section 12.45 permits a trial court to take into account an unadjudicated offense when assessing punishment if the State consents and the defendant admits the offense. Tex. Penal Code Ann. § 12.45(a)–(b). When the court does so, the State is barred from prosecuting the accused for the offense taken into account under this provision. *Id.* § 12.45(c).

Section 12.45 does not require that a defendant plead guilty to an unadjudicated offense; rather, the statute requires that the defendant, during the punishment hearing, admit guilt to the unadjudicated offense. *Zapata v. State*, 905 S.W.2d 15, 16 (Tex. App.—Corpus Christi 1995, no pet.). Following Texas Court of Criminal Appeals precedent in *Lopez v. State*, 253 S.W.3d 680 (Tex. Crim. App. 2008), this court has held that offenses barred under section 12.45 are neither convictions nor part of a defendant's prior criminal record. *Ex parte Karlson*, 282 S.W.3d 118, 127 (Tex. App.—Fort Worth 2009, pet. ref'd); *see Lopez*, 253 S.W.3d at 686 (holding that extraneous offenses to which defendant had admitted guilt in prior prosecution were not prior convictions for purpose of impeachment in subsequent prosecution).

14

The admissibility of evidence at punishment is guided largely by article 37.07, section 3 of the Texas Code of Criminal Procedure. *Haley v. State*, 173 S.W.3d 510, 513 (Tex. Crim. App. 2005); *see* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2008). Under this section, the prosecution may offer evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1); *Haley*, 173 S.W.3d at 515. "Before the jury can consider this evidence in assessing punishment, it must be satisfied beyond a reasonable doubt that the acts are attributable to the defendant." *Haley*, 173 S.W.3d at 515.

McClenny's only objection at trial was that State's Exhibits 8 and 10 were inadmissible because they were not prior convictions. He did not complain at trial, and does not argue on appeal, that the State failed to prove beyond a reasonable doubt that the acts were attributable to him or that evidence of these acts was irrelevant. The fact that McClenny had not been finally convicted of the two pleaded and barred offenses does not matter. *See Haley*, 173 S.W.3d at 514–15. Accordingly, we overrule McClenny's fifth point.

**VI. SUFFICIENCY OF THE EVIDENCE**

15

In his sixth and seventh points, McClenny argues that the evidence is legally and factually insufficient to convict him of possession of a controlled substance.

## A. Standards of Review

### 1. Legal Sufficiency Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.

16

*Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

### 2. Factual Sufficiency Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.

17

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson*, 23 S.W.3d at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

### B. Possession of a Controlled Substance

To prove possession of a controlled substance, the State must prove that the accused exercised control, management, or care over the substance and that he knew the matter possessed was contraband. *See* Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2008); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Poindexter v. State*, 153 S.W.3d 402, 405

18

(Tex. Crim. App. 2005). The accused's presence at the location were contraband is found is insufficient, by itself, to establish actual care, custody, or control over the contraband. *Evans*, 202 S.W.3d at 162. But the accused's presence or proximity to the contraband, when combined with other evidence, either direct or circumstantial, may establish that element beyond a reasonable doubt. *Id*. The evidence "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405–406 (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).

Among the factors to be considered in evaluating the existence of affirmative links between the accused and the contraband are: (1) whether the defendant was present when the search was executed; (2) whether the contraband was in plain view; (3) whether the defendant was in close proximity to and had access to the contraband; (4) whether the defendant was under the influence of a controlled substance when arrested; (5) whether the defendant possessed other contraband or controlled substances when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the

19

defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was the driver of the automobile in which the contraband was found; (14) whether the defendant was found with a large amount of cash; and (15) whether the conduct of the accused indicated a consciousness of guilt. *McQuarters v. State*, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref'd). It is the logical force of the evidence, not the number of links, that supports the factfinder's verdict. *Evans*, 202 S.W.3d at 162, 166.

## C. Legally Sufficient Evidence

Applying the *McQuarters* factors to the present case, the record demonstrates that McClenny was present when the deputies searched Swink's truck, that a marijuana roach and the black wallet containing drugs were visible by glancing in the passenger side of the truck, that McClenny was riding in the passenger side of the truck in close proximity to the drugs found stuffed between the passenger seat and backrest cushions, that Swink and McClenny had smoked "dope" about an hour before their arrest, that Deputies Kiefer and Williamson observed McClenny making furtive movements in the passenger seat where the drugs were found, and that McClenny indicated a consciousness of

guilt when he told Swink that he had hidden his drugs in Swink's car and had hoped they would not be found. *See McQuarters*, 58 S.W.3d at 259.

Viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that McClenny was guilty of possession of a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.002(38); *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. Accordingly, we hold that the evidence is legally sufficient to support McClenny's conviction.

## D. Factually Sufficient Evidence

Having found the evidence legally sufficient, we now address whether the evidence is factually sufficient to support McClenny's conviction. The record demonstrates that Swink owned the truck where the drugs were found and that McClenny did not have any drugs on his person. However, the deputies found the containers of drugs on the passenger side of the vehicle, where McClenny was sitting and where the deputies had seen him making furtive movements. Swink testified that the drugs founds in the passenger side of his truck belonged to McClenny.

On appeal, McClenny attacks Swink's credibility as a witness, arguing that he was under the influence of drugs when he was arrested and that he did not tell anyone that he and McClenny had used drugs the morning that they

21

were arrested until the day of McClenny's trial. But the jury is the sole trier of fact and judge of the credibility of the witnesses, and we must give due deference to the jury's determinations of the weight and credibility of the evidence. *See Johnson*, 23 S.W.3d at 9; *Cain*, 958 S.W.2d at 407.

McClenny also argues that factually insufficient evidence exists to support his conviction because Swink testified that he had just purchased drugs from McClenny for $20 or $30 but the deputies found only sixty-nine cents on McClenny. But Swink's testimony offered a plausible explanation for this: he testified that he and McClenny had been playing slot machines at the game room before they were arrested.

We have thoroughly reviewed the evidence in a neutral light, and we find no objective basis for holding that the jury's verdict was clearly wrong or manifestly unjust or that it is contradicted by the great weight and preponderance of the evidence. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Rather, the evidence presented at trial was sufficient to support the jury's verdict, and no contrary evidence exists that would render the evidence factually insufficient under the applicable standard of review. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, having held that the evidence is factually sufficient to support McClenny's conviction, we overrule his seventh point.

## VII. Conclusion

Having overruled all of McClenny's points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 8, 2009