02-10-192-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00192-CR

 

 


 
 
 Kerry Michael Dronso
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 372nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

 

Introduction

          Appellant
Kerry Michael Dronso appeals his conviction for capital murder.  We affirm.

Background
Facts and Procedural History

          Appellant
and an accomplice forced their way into the Bida L.A. Game Room in Arlington,
where they stole money and other items after Appellant shot the security guard,
Ali Aziz, in the chest.  Aziz died of his wounds shortly thereafter, and the
State charged Appellant with capital murder but did not seek the death penalty. 
The jury found Appellant guilty, and the trial court sentenced him to life in
prison.

Elite
Game Room Incident

In
his first two points, Appellant challenges the trial court’s rulings on his
objections to the prosecutor’s opening statement remarks about an incident that
occurred at the Elite Game Room minutes before the capital murder at Bida L.A.,
and evidence of that earlier incident that was offered during the guilt-innocence
phase of trial.  Appellant combines these two points for argument but focuses on
the second: that evidence of the prior incident was inadmissible extraneous
offense evidence.[2]  Specifically, he argues
that the State did not need the evidence of the prior incident at Elite to
prove that Appellant intended to commit murder at Bida L.A., and that it was not
probative of intent to kill.[3]

          The
State responds that the challenged evidence was not evidence of an extraneous
offense because it showed only that Appellant and an accomplice were denied
entry into the Elite; and denied entry is not an “act” as contemplated by rule 404(b)’s
prohibition of “other crimes, wrongs or acts” offered solely to prove character
conformity.  See Tex. R. Evid. 404(b).  We agree.

          Appellant
secured a running objection to “any reference to what goes on at the Elite Game
Room sometime after 4:00 o’clock in the morning, but only for that time
period.”  The record shows that Abdul Abdullah was working as a security guard at
the Elite the morning Ali Aziz was shot at Bida L.A.  Abdullah testified as
follows:

          Q.  Okay. 
And sometime after four, maybe –– maybe more specifically after 5:00 o’clock in
the morning, . . . did two individuals approach the door?

 

          A.  Yes.

 

          . . . . 

 

          Q.  And was
there something suspicious about those two individuals?

 

          . . . .

 

          A.  Yeah.

 

          Q.  Okay. 
I mean, something that caught your attention as a security guard, correct?

 

          A.  Yes.

 

          Q.  Okay. 
Did these two individuals ring the doorbell?

 

          A.  Uh-huh.

 

          Q.  What
did you do?

 

          A.  Well, I
open –– I opened the door.  And before I opened the door, I look at them.  In
the little window, I saw them.  And when I saw their face, they look kind of
suspicious to me.  I mean, then I opened the door with one hand and I look at
them and I asked them for IDs.  “If you don’t have IDs, you’re not coming in.” 
And one of them, the –– the short guy he tried to put his hand here and he
turned away right away.

 

. . . .

 

          THE
REPORTER:  Could you repeat that, “The short guy, he tried. . . ”

 

          THE
WITNESS:  The short guy, yeah, the short guy, when I asked them for the ID,
both of them was there like this (demonstrating).  And the short guy come in
like –– he came up to me, then he put his hand (demonstrating) and he walk
away.  He tried to walk away and the tall one, he tried to argue with me or
something.  He say, “Why are you asking like this?”  “Why are you asking for
IDs?”  And I asked him, “If you don’t have ID, you’re not coming in.”  Then I
do with my hand like this behind my back.  I wasn’t armed at that.  And I
became smart to –– to make him scared from me or something.  So I put my hand
behind my back and I was open the door like this and I closed a little bit more
and I say, “If you don’t have ID, you’re not coming in.  There’s a rule in
here.”

 

          Q.  (BY
[THE PROSECUTOR])  Okay.  Let me ask you this––

 

          A.  And
they left –– after I asked them, they left.

 

          . . . .

          

          Q.  Okay. 
And as they left the location, did you –– did you watch them then leave?

 

          A.  Yeah. 
When after –– when he was trying to argue with me and I repeat that and I told
them, “If you don’t have ID, sir, you cannot come in.”

 

          Q.  Okay.

 

          A.  And he
said, “Bulls[…],” or something and he walked away.  I think he saw his –– his
short friend, he left.  So he walked and he left and they went to a car.  When
I close the door, I watch them and –– and they have a little window I can watch
outside.

 

          Q.  So did
they walk away from the scene or did they drive away from the scene?

 

          A.  No,
they walked.  They was walking for a couple of –– like it was from here to that
officer right there at the door.  They walked to their car.

 

          Q.  You saw
them get into a vehicle?

 

          A.  Yes.

 

          Q.  What
type of vehicle was it?

 

          A.  It was
like brown, little –– little car.  I think it was Honda or something like that.

 

          Q.  Okay.

 

          A.  It was
brown, I think, a little car.

 

          Q.  Now,
sometime after they left, did you learn that your friend, Ali Aziz, had been
killed, or had been shot?

 

          A.  No,
after –– after like 30 minute or something like that I hear about it.

          The
State presented a compact disc recording (CD) of three videos taken from
security cameras at the Elite.  Through other witnesses, the State identified Appellant
as the shorter of the two men depicted in the videos.  The CD corroborates Abdullah’s
testimony, and shows the whole of the Elite incident–– Appellant and his cohort’s
parking, exiting the car, waiting at the game room door, conversing with the
guard, and leaving––took about two minutes.

          In
sum, our review of the evidence that Appellant calls “extraneous offense
evidence” showed that within a very brief period, Appellant and a taller man
approached the Elite, “seemed suspicious” to the security guard, who turned
them away when they did not produce identification––and they left.  To constitute
an extraneous offense, the evidence must show that the defendant is connected
to some crime or bad act.  Lockhart v. State, 847 S.W.2d 568, 573 (Tex.
Crim. App. 1992), cert. denied, 510 U.S. 849 (1993); Harris v. State,
738 S.W.2d 207, 224 (Tex. Crim. App.) (op. on reh’g), cert. denied, 484
U.S. 872 (1987).

          As
discussed above, and undisputed, the act the complained-of evidence tied
Appellant to was approaching the Elite Game Room and leaving it.  This is not evidence
that Appellant committed a “bad act” as contemplated by rule 404(b).  The court
of criminal appeals has held that if the evidence fails to show that an offense
was committed or that the accused was connected to the offense, it is not
evidence of an extraneous offense.  Moreno v. State, 858 S.W.2d 453, 463
(Tex. Crim. App.), cert. denied, 510 U.S. 966 (1993); McKay v. State,
707 S.W.2d 23, 32 (Tex. Crim. App. 1985), cert. denied, 479 U.S. 871
(1986).  Because the evidence does not show a crime or bad act, we hold that
the trial court did not abuse its discretion by admitting it in evidence.  See
Lockhart, 847 S.W.2d at 573; Moreno, 858 S.W.2d at 463; McKay,
707 S.W.2d at 32; Tex. R. Evid. 404(b).  We overrule Appellant’s second point.

          In
his first point, Appellant complains of the prosecutor’s referring to the Elite
incident during the State’s opening remarks:

          [THE
PROSECUTOR] . . . [O]n September the 14th 2008, sometime around 6:00 o’clock in
the morning, the evidence is going to show that [Appellant] and his
co-defendant [. . .] drove to a location in Arlington, Texas, on Collins
Street.  It was called the Elite Game Room.  And they went there for the
purpose of robbing that location.  They went to commit an aggravated robbery,
because they were armed.

 

          MR. MOORE
[for Appellant]:  You know, I object to that, Your Honor.  He’s going into an
extraneous offense.

 

          THE COURT: 
Overruled if he’s talking about at the time and the place of the Elite –––
Elite game Room or the circumstances immediately leading up thereto.

 

          MR. MOORE: 
May I have a continuing objection?

 

          THE COURT: 
You may have with any reference to the term “armed” relating to the Elite Game
Room events.

          Appellant
frames the issue in his first point as “[t]he trial court abused its discretion
by admitting an extraneous offense in opening statement where the State had no
need for it and the unfair prejudice substantially outweighed any minimal
probity.”  Aside from pointing out where in the record he objected to the
State’s first remark about the Elite incident, Appellant says nothing about his
claim that the trial court should have sustained his objection to the State’s
remarks during opening statement.  He presents no argument to support his
assertion that the State had “no need” to set out for the jury that it expected
to prove the earlier incident or to support his claim that “unfair prejudice
substantially outweighed any minimal probity,” nor will we speculate about what
his argument might be.  Further, Appellant cites no legal authority holding
that it is error for a trial court to overrule an objection like the one he lodged
against the prosecutor’s remarks.  Because Appellant provides no argument or
legal authority to support his position in his first point, we overrule his
first point as inadequately briefed.  Tex. R. App. P. 38.1(i); Russeau v.
State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), cert. denied, 548
U.S. 926 (2006); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App.
2000), cert. denied, 532 U.S. 1053 (2001); Mosley, 983 S.W.2d at
256.

Intent

          In
his third point, Appellant contends that the evidence is insufficient to prove
that he intended to kill Aziz.

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v.
State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  The essential element,
intent, is a fact issue for the jury that is almost always proven through
evidence of the circumstances surrounding the crime.  Childs v. State,
21 S.W.3d 631, 635 (Tex. App.––Houston [14th Dist.] 2000, pet. ref’d) (citing
Robles v. State, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984)).  Intent may be
inferred from the words and conduct of the accused.  Id.  Also, the jury
may infer intent to kill from the use of a deadly weapon unless it would be
unreasonable to infer that death or serious bodily injury would result from the
use of the weapon.  Staley v. State, 887 S.W.2d 885, 889 (Tex. Crim.
App. 1994), cert. denied, 514 U.S. 1020 (1995); Ross v. State,
861 S.W.2d 870, 873 (Tex. Crim. App. 1992).

          Appellant
contends that the evidence is insufficient to prove he intended to kill Aziz “because
the evidence established that the shooting occurred in a struggle.”  Texas courts
have rejected claims that evidence of a killing during a struggle negates
intent to kill.  See Milton v. State, 599 S.W.2d 824, 826 (Tex. Crim.
App. 1980) (rejecting claim that shooting during a struggle over a gun in a
robbery was not deliberate[4]),
cert. denied, 451 U.S. 1031 (1981); Sowell v. State, No. 03-10-00081-CR,
2010 WL 3431682, at *3–4 (Tex. App.––Austin Aug. 31, 2010, pet. ref’d) (mem.
op., not designated for publication) (murder during robbery and struggle at
game room).

          Moreover,
Appellant admitted that he killed Aziz to keep him from shooting his
accomplice.  Sebastian Lazarin testified that he drove Appellant by the Bida
L.A. after the shooting and that Appellant talked about it:

          Q.  Did you
drive by a location where there was police tape out front?

 

          A. 
Yes, sir.

          Q.  And did
Kerry Dronso, the Defendant, start talking about where he got the money where
this police tape was out in front of a location?

 

          A. 
Yes, sir.

          Q. 
What did he say?

          A. 
That that’s the lick he had hit right there at the game room.

          Q. 
What did he say about it?

          A. 
That he had shot a security guard.

          Q. 
Did he say how the shooting occurred?

          A.  Well,
he shot the security guard because if he didn’t shoot the security guard, the
security guard would shoot Chris Money.

          Logic
demands that if Appellant shot Aziz for a reason, such as to prevent him
from shooting someone else, he intended to shoot him.

          Also,
the evidence showed that Appellant shot Aziz at close range after holding a loaded
handgun against Aziz’s chest.  Karen Roy testified that she was at the Bida
L.A. Game Room when the shooting occurred.  She further testified as follows:

          Q. 
Okay.  At some point you heard a gunshot?

          A. 
Yes, sir.

          Q.  Where did you see the shorter
suspect’s firearm or handgun when you heard this shot?

 

          A. 
In the security guard’s chest, in his chest.

          Viewed
in the light most favorable to the verdict, we hold that the evidence that
Appellant held a loaded firearm against Aziz’s chest, and admitted that he shot
him so Aziz would not shoot Appellant’s accomplice is sufficient to support a
rational factfinder’s conclusion beyond a reasonable doubt that Appellant
intended to kill Aziz.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. 
Accordingly, we overrule Appellant’s third point.

Fingerprints

          In
his fourth point, Appellant contends that the trial court abused its discretion
by admitting over his objection testimony from the State’s crime scene
investigator and fingerprint examiner, Susan Ozuna, that a latent print found
at the scene matched prints she took of Appellant in court.  Appellant asserts
that the trial court should have sustained his objection because the comparison
was not “peer-reviewed,” which Ozuna testified is a requirement of Arlington
Police Department policy before comparison results may be included in a police
report.

          The
record shows that before Appellant lodged the objection that forms the basis of
his complaint, Ozuna testified without objection that in 2008 she had matched
the latent crime-scene print with another known print from Appellant and that
the 2008 match had been verified by another examiner.  The court of criminal
appeals has held that any error in the admission of evidence is cured when similar
evidence comes in elsewhere without objection.  Lane v. State, 151
S.W.3d 188, 193 (Tex. Crim. App. 2004); Valle v. State, 109 S.W.3d 500,
509 (Tex. Crim. App. 2003); see also Leday v. State, 983 S.W.2d
713, 718 (Tex. Crim. App. 1998) (“Our rule . . . is that overruling an
objection to evidence will not result in reversal when other such evidence was
received without objection, either before or after the complained-of
ruling.”).  Because Ozuna testified without objection that she matched the
latent print found at the scene with a known print of Appellant, we uphold the
trial court’s admission of her testimony that she matched the same latent print
with known prints of Appellant taken in the courtroom.  See Lane, 151
S.W.3d at 193.  Appellant’s fourth point is overruled.

Expert

          In
his fifth point, Appellant contends that the trial court abused its discretion
by allowing forensic fingerprint examiner Peter Salicco’s expert testimony
matching latent prints found at the scene with Appellant’s known prints because
the State did not timely disclose Salicco as an expert witness.  This point is
without merit.  The clerk’s record shows that the State disclosed Salicco as an
expert witness at least three times before trial.

          To
the extent that Appellant claims that the State failed to disclose the
substance of Salicco’s testimony, that complaint, too, is without merit. 
First, as the State points out, the code of criminal procedure does not
authorize a trial court to require the disclosure of the subject or substance
of an expert’s testimony.  Tex. Code Crim. Proc. Ann. art. 39.14(b) (West Supp.
2011); Tamez v. State, 205 S.W.3d 32, 39 (Tex. App.––Tyler 2006, no
pet.).  Second, having reviewed Appellant’s motion requesting disclosure of the
State’s experts and the trial court’s ruling on the motion, we conclude that
Appellant did not request disclosure of the substance of Salicco’s testimony
and that the trial court did not order such disclosure.  In short, because
Appellant got all the disclosure he requested and all to which he was entitled,
we overrule his fifth point.

Parties Charge

          In
his sixth and final point, Appellant contends that the trial court erroneously
submitted a parties charge to the jury because the indictment did not allege
party liability.  The court of criminal appeals has recently reaffirmed
long-standing Texas precedent that the State is not required to plead that a
person acted as a party in order to authorize a conviction as a party.  Adames
v. State, 353 S.W.3d 854, 861 (Tex. Crim. App. 2011) (“While the parties
theory was not plead in the indictment, both state and federal law specify that
due process does not require a defendant’s culpability as a party to the
offense to be plead in the charging instrument.”), cert. denied, 123 S.
Ct. 1763 (2012); Marable v. State, 85 S.W.3d 287, 287 (Tex. Crim. App.
2002) (“[I]t is well-settled that the law of parties need not be pled in the
indictment.”); Montoya v. State, 810 S.W.2d 160, 165 (Tex. Crim. App.
1989) (“It is well accepted that the law of parties may be applied to a case
even though no such allegation is contained in the indictment.”), cert.
denied, 502 U.S. 961 (1991).  We overrule Appellant’s sixth point.

Conclusion

          Having
overruled all of Appellant’s points, we affirm the trial court’s judgment.

 

 

LEE GABRIEL
JUSTICE

 

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
May 10, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. Evid.
403, 404(b).





[3]The State notes that
Appellant’s “only real argument” is that the evidence was not admissible to
show intent.





[4]The discussion in Milton
concerned the former “deliberateness” issue in the capital murder context.  See
Tex. Code Crim. Proc. Ann. art. 37.071(b)(1) (Vernon 1981), repealed by Act
of June 16, 1991, 72nd Leg., R.S., ch. 838, § 1, 1991 Tex. Gen. Laws 2898, 2899
(eff. Sept. 1, 1991).  The analysis applies with equal force to the issue of
intent to kill.  43A George E. Dix & John M. Schmolesky, Texas Practice:
Criminal Practice & Procedure § 49:11 (3d. ed. 2011) (characterizing
the distinction between intent to kill and deliberate as “paper thin”).