# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


### NO. 02-10-00192-CR

KERRY MICHAEL DRONSO                                                    APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

### FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Kerry Michael Dronso appeals his conviction for capital murder. We affirm.

### Background Facts and Procedural History

Appellant and an accomplice forced their way into the Bida L.A. Game Room in Arlington, where they stole money and other items after Appellant shot the

---

[1]*See* Tex. R. App. P. 47.4.

security guard, Ali Aziz, in the chest. Aziz died of his wounds shortly thereafter, and the State charged Appellant with capital murder but did not seek the death penalty. The jury found Appellant guilty, and the trial court sentenced him to life in prison.

## Elite Game Room Incident

In his first two points, Appellant challenges the trial court's rulings on his objections to the prosecutor's opening statement remarks about an incident that occurred at the Elite Game Room minutes before the capital murder at Bida L.A., and evidence of that earlier incident that was offered during the guilt-innocence phase of trial. Appellant combines these two points for argument but focuses on the second: that evidence of the prior incident was inadmissible extraneous offense evidence.[2] Specifically, he argues that the State did not need the evidence of the prior incident at Elite to prove that Appellant intended to commit murder at Bida L.A., and that it was not probative of intent to kill.[3]

The State responds that the challenged evidence was not evidence of an extraneous offense because it showed only that Appellant and an accomplice were denied entry into the Elite; and denied entry is not an "act" as contemplated by rule 404(b)'s prohibition of "other crimes, wrongs or acts" offered solely to prove character conformity. *See* Tex. R. Evid. 404(b). We agree.

---

[2]*See* Tex. R. Evid. 403, 404(b).

[3]The State notes that Appellant's "only real argument" is that the evidence was not admissible to show intent.

Appellant secured a running objection to "any reference to what goes on at the Elite Game Room sometime after 4:00 o'clock in the morning, but only for that time period." The record shows that Abdul Abdullah was working as a security guard at the Elite the morning Ali Aziz was shot at Bida L.A. Abdullah testified as follows:

> Q. Okay. And sometime after four, maybe — maybe more specifically after 5:00 o'clock in the morning, . . . did two individuals approach the door?
>
> A. Yes.
>
> . . . .
>
> Q. And was there something suspicious about those two individuals?
>
> . . . .
>
> A. Yeah.
>
> Q. Okay. I mean, something that caught your attention as a security guard, correct?
>
> A. Yes.
>
> Q. Okay. Did these two individuals ring the doorbell?
>
> A. Uh-huh.
>
> Q. What did you do?
>
> A. Well, I open — I opened the door. And before I opened the door, I look at them. In the little window, I saw them. And when I saw their face, they look kind of suspicious to me. I mean, then I opened the door with one hand and I look at them and I asked them for IDs. "If you don't have IDs, you're not coming in." And one of them, the — the short guy he tried to put his hand here and he turned away right away.

. . . .

THE REPORTER:  Could you repeat that, "The short guy, he tried. . . "

THE WITNESS:  The short guy, yeah, the short guy, when I asked them for the ID, both of them was there like this (demonstrating). And the short guy come in like — he came up to me, then he put his hand (demonstrating) and he walk away.  He tried to walk away and the tall one, he tried to argue with me or something.  He say, "Why are you asking like this?"  "Why are you asking for IDs?"  And I asked him, "If you don't have ID, you're not coming in."  Then I do with my hand like this behind my back.  I wasn't armed at that.  And I became smart to — to make him scared from me or something.  So I put my hand behind my back and I was open the door like this and I closed a little bit more and I say, "If you don't have ID, you're not coming in.  There's a rule in here."

Q.  (BY [THE PROSECUTOR])  Okay.  Let me ask you this—

A.  And they left — after I asked them, they left.

. . . .

Q.  Okay.  And as they left the location, did you — did you watch them then leave?

A.  Yeah.  When after — when he was trying to argue with me and I repeat that and I told them, "If you don't have ID, sir, you cannot come in."

Q.  Okay.

A.  And he said, "Bulls[…]," or something and he walked away.  I think he saw his — his short friend, he left.  So he walked and he left and they went to a car.  When I close the door, I watch them and — and they have a little window I can watch outside.

Q.  So did they walk away from the scene or did they drive away from the scene?

4

A. No, they walked. They was walking for a couple of — like it was from here to that officer right there at the door. They walked to their car.

Q. You saw them get into a vehicle?

A. Yes.

Q. What type of vehicle was it?

A. It was like brown, little — little car. I think it was Honda or something like that.

Q. Okay.

A. It was brown, I think, a little car.

Q. Now, sometime after they left, did you learn that your friend, Ali Aziz, had been killed, or had been shot?

A. No, after — after like 30 minute or something like that I hear about it.

The State presented a compact disc recording (CD) of three videos taken from security cameras at the Elite. Through other witnesses, the State identified Appellant as the shorter of the two men depicted in the videos. The CD corroborates Abdullah's testimony, and shows the whole of the Elite incident—Appellant and his cohort's parking, exiting the car, waiting at the game room door, conversing with the guard, and leaving—took about two minutes.

In sum, our review of the evidence that Appellant calls "extraneous offense evidence" showed that within a very brief period, Appellant and a taller man approached the Elite, "seemed suspicious" to the security guard, who turned them away when they did not produce identification—and they left. To constitute an

5

extraneous offense, the evidence must show that the defendant is connected to some crime or bad act. *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 849 (1993); *Harris v. State*, 738 S.W.2d 207, 224 (Tex. Crim. App.) (op. on reh'g), *cert. denied*, 484 U.S. 872 (1987).

As discussed above, and undisputed, the act the complained-of evidence tied Appellant to was approaching the Elite Game Room and leaving it. This is not evidence that Appellant committed a "bad act" as contemplated by rule 404(b). The court of criminal appeals has held that if the evidence fails to show that an offense was committed or that the accused was connected to the offense, it is not evidence of an extraneous offense. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App.), *cert. denied*, 510 U.S. 966 (1993); *McKay v. State*, 707 S.W.2d 23, 32 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 871 (1986). Because the evidence does not show a crime or bad act, we hold that the trial court did not abuse its discretion by admitting it in evidence. *See Lockhart*, 847 S.W.2d at 573; *Moreno*, 858 S.W.2d at 463; *McKay*, 707 S.W.2d at 32; Tex. R. Evid. 404(b). We overrule Appellant's second point.

In his first point, Appellant complains of the prosecutor's referring to the Elite incident during the State's opening remarks:

> [THE PROSECUTOR] . . . [O]n September the 14th 2008, sometime around 6:00 o'clock in the morning, the evidence is going to show that [Appellant] and his co-defendant [. . .] drove to a location in Arlington, Texas, on Collins Street. It was called the Elite Game Room. And they went there for the purpose of robbing that location. They went to commit an aggravated robbery, because they were armed.

6

MR. MOORE [for Appellant]: You know, I object to that, Your Honor. He's going into an extraneous offense.

THE COURT: Overruled if he's talking about at the time and the place of the Elite —— Elite game Room or the circumstances immediately leading up thereto.

MR. MOORE: May I have a continuing objection?

THE COURT: You may have with any reference to the term "armed" relating to the Elite Game Room events.

Appellant frames the issue in his first point as "[t]he trial court abused its discretion by admitting an extraneous offense in opening statement where the State had no need for it and the unfair prejudice substantially outweighed any minimal probity." Aside from pointing out where in the record he objected to the State's first remark about the Elite incident, Appellant says nothing about his claim that the trial court should have sustained his objection to the State's remarks during opening statement. He presents no argument to support his assertion that the State had "no need" to set out for the jury that it expected to prove the earlier incident or to support his claim that "unfair prejudice substantially outweighed any minimal probity," nor will we speculate about what his argument might be. Further, Appellant cites no legal authority holding that it is error for a trial court to overrule an objection like the one he lodged against the prosecutor's remarks. Because Appellant provides no argument or legal authority to support his position in his first point, we overrule his first point as inadequately briefed. Tex. R. App. P. 38.1(i); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006); *Tong v.*

7

*State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1053 (2001); *Mosley*, 983 S.W.2d at 256.

### Intent

In his third point, Appellant contends that the evidence is insufficient to prove that he intended to kill Aziz.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The essential element, intent, is a fact issue for the jury that is almost always proven through evidence of the circumstances surrounding the crime. *Childs v. State*, 21 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (*citing Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984)). Intent may be inferred from the words and conduct of the accused. *Id*. Also, the jury may infer intent to kill from the use of a deadly weapon unless it would be unreasonable to infer that death or serious bodily injury would result from the use of the weapon. *Staley v. State*, 887 S.W.2d 885, 889 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1020 (1995); *Ross v. State*, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992).

Appellant contends that the evidence is insufficient to prove he intended to kill Aziz "because the evidence established that the shooting occurred in a struggle." Texas courts have rejected claims that evidence of a killing during a struggle

8

negates intent to kill. *See Milton v. State*, 599 S.W.2d 824, 826 (Tex. Crim. App. 1980) (rejecting claim that shooting during a struggle over a gun in a robbery was not deliberate[4]), *cert. denied*, 451 U.S. 1031 (1981); *Sowell v. State*, No. 03-10-00081-CR, 2010 WL 3431682, at *3–4 (Tex. App.—Austin Aug. 31, 2010, pet. ref'd) (mem. op., not designated for publication) (murder during robbery and struggle at game room).

Moreover, Appellant admitted that he killed Aziz to keep him from shooting his accomplice. Sebastian Lazarin testified that he drove Appellant by the Bida L.A. after the shooting and that Appellant talked about it:

> Q. Did you drive by a location where there was police tape out front?
>
> A. Yes, sir.
>
> Q. And did Kerry Dronso, the Defendant, start talking about where he got the money where this police tape was out in front of a location?
>
> A. Yes, sir.
>
> Q. What did he say?
>
> A. That that's the lick he had hit right there at the game room.
>
> Q. What did he say about it?

---

[4]The discussion in *Milton* concerned the former "deliberateness" issue in the capital murder context. *See* Tex. Code Crim. Proc. Ann. art. 37.071(b)(1) (Vernon 1981), *repealed by* Act of June 16, 1991, 72nd Leg., R.S., ch. 838, § 1, 1991 Tex. Gen. Laws 2898, 2899 (eff. Sept. 1, 1991). The analysis applies with equal force to the issue of intent to kill. 43A George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice & Procedure* § 49:11 (3d. ed. 2011) (characterizing the distinction between intent to kill and deliberate as "paper thin").

9

A. That he had shot a security guard.

Q. Did he say how the shooting occurred?

A. Well, he shot the security guard because if he didn't shoot the security guard, the security guard would shoot Chris Money.

Logic demands that if Appellant shot Aziz for a *reason*, such as to prevent him from shooting someone else, he *intended* to shoot him.

Also, the evidence showed that Appellant shot Aziz at close range after holding a loaded handgun against Aziz's chest. Karen Roy testified that she was at the Bida L.A. Game Room when the shooting occurred. She further testified as follows:

Q. Okay. At some point you heard a gunshot?

A. Yes, sir.

Q. Where did you see the shorter suspect's firearm or handgun when you heard this shot?

A. In the security guard's chest, in his chest.

Viewed in the light most favorable to the verdict, we hold that the evidence that Appellant held a loaded firearm against Aziz's chest, and admitted that he shot him so Aziz would not shoot Appellant's accomplice is sufficient to support a rational factfinder's conclusion beyond a reasonable doubt that Appellant intended to kill Aziz. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Accordingly, we overrule Appellant's third point.

**Fingerprints**

In his fourth point, Appellant contends that the trial court abused its discretion by admitting over his objection testimony from the State's crime scene investigator and fingerprint examiner, Susan Ozuna, that a latent print found at the scene matched prints she took of Appellant in court. Appellant asserts that the trial court should have sustained his objection because the comparison was not "peer-reviewed," which Ozuna testified is a requirement of Arlington Police Department policy before comparison results may be included in a police report.

The record shows that before Appellant lodged the objection that forms the basis of his complaint, Ozuna testified without objection that in 2008 she had matched the latent crime-scene print with another known print from Appellant and that the 2008 match had been verified by another examiner. The court of criminal appeals has held that any error in the admission of evidence is cured when similar evidence comes in elsewhere without objection. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). Because Ozuna testified without objection that she matched the latent print found at the scene with a known print of Appellant, we uphold the trial court's admission of her testimony that she matched the same latent print with known prints of Appellant taken in the courtroom. *See Lane*, 151 S.W.3d at 193. Appellant's fourth point is overruled.

**Expert**

In his fifth point, Appellant contends that the trial court abused its discretion by allowing forensic fingerprint examiner Peter Salicco's expert testimony matching latent prints found at the scene with Appellant's known prints because the State did not timely disclose Salicco as an expert witness. This point is without merit. The clerk's record shows that the State disclosed Salicco as an expert witness at least three times before trial.

To the extent that Appellant claims that the State failed to disclose the substance of Salicco's testimony, that complaint, too, is without merit. First, as the State points out, the code of criminal procedure does not authorize a trial court to require the disclosure of the subject or substance of an expert's testimony. Tex. Code Crim. Proc. Ann. art. 39.14(b) (West Supp. 2011); *Tamez v. State*, 205 S.W.3d 32, 39 (Tex. App.—Tyler 2006, no pet.). Second, having reviewed Appellant's motion requesting disclosure of the State's experts and the trial court's ruling on the motion, we conclude that Appellant did not request disclosure of the substance of Salicco's testimony and that the trial court did not order such disclosure. In short, because Appellant got all the disclosure he requested and all to which he was entitled, we overrule his fifth point.

**Parties Charge**

In his sixth and final point, Appellant contends that the trial court erroneously submitted a parties charge to the jury because the indictment did not allege party liability. The court of criminal appeals has recently reaffirmed long-standing Texas

12

precedent that the State is not required to plead that a person acted as a party in order to authorize a conviction as a party. *Adames v. State*, 353 S.W.3d 854, 861 (Tex. Crim. App. 2011) ("While the parties theory was not plead in the indictment, both state and federal law specify that due process does not require a defendant's culpability as a party to the offense to be plead in the charging instrument."), *cert. denied*, 123 S. Ct. 1763 (2012); *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) ("[I]t is well-settled that the law of parties need not be pled in the indictment."); *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989) ("It is well accepted that the law of parties may be applied to a case even though no such allegation is contained in the indictment."), *cert. denied*, 502 U.S. 961 (1991). We overrule Appellant's sixth point.

**Conclusion**

Having overruled all of Appellant's points, we affirm the trial court's judgment.


LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 10, 2012